JACKSON et al. v. ROWE.

(Supreme Court, Appellate Division, Second Department. June 29, 1905.)

1. TAXATION—TAX SALES—VALIDITY—ASSESSMENT ROLL—SIGNATURE TO VER-
    IFICATION.
    Tax Law 1896, p. 811, c. 908, § 38, requires the assessors to make two
    copies of the roll—one to be retained by them, and the other filed in the
    office of the town clerk, while the original is to be delivered to the super-
    visor. Section 56 (page 816) provides that the board of supervisors, after
    equalizing the assessments, correcting errors, and levying the tax, shall
    deliver the corrected assessment roll or a fair copy to the collector of the
    tax district; and section 59 (page 818) requires the clerk of the board of
    supervisors to transmit an abstract of the tax rolls to the county treas-

urer. After consolidation of territory with the city of New York, it was found that the signatures to the verification of the assessment roll for a certain year prior to the consolidation, on file in the office of the bureau for the collection and assessment of arrears, were all in the same handwriting. *Held* that, in the absence of any evidence that the roll on file in the office of the bureau was the original, the fact that the signatures to the verification were all in the same handwriting had no tendency to prove that the assessors never subscribed to the oath as required by statute, and hence the discovery of the facts relative to such signatures after judgment for defendant in an action to recover land held by defendant as purchaser at a sale for the taxes of the year in question was no ground for a new trial.

2. SAME—JURISDICTIONAL DEFECT.
   Failure of assessors to sign the verification to the assessment roll as required by statute is not a "defect in the proceedings affecting the jurisdiction on constitutional grounds," within Tax Law 1896, p. 841, c. 908, § 132, providing that conveyances and certificates of tax sales shall be subject to cancellation for such defects at any time within five years.

3. SAME—ESTOPPEL.
   More than two years after sale of land to the state for taxes, the former owners presented a petition stating that title to the land was in the state, and requesting a sale. Tax Law 1896, p. 841, c. 908, § 131, makes a conveyance by the Comptroller conclusive after two years. *Held* that, after the sale petitioned for, the former owners were estopped from asserting as against the purchaser at that sale that the sale to the state was invalid for a defect apparent on the face of the record, and this is true though such former owners held as trustees under a will.

Appeal from Special Term, Richmond County.

Action by Henry H. Jackson and others, as executors and trustees of the last will and testament of Peter A. H. Jackson, against Mary E. Rowe. From a judgment for defendant, and from an order denying a motion for a new trial, plaintiffs appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

John L. Wells, for appellants.

Frederick B. Woodruff (Frank E. Smith and Smith M. Weed, on the brief), for respondent.

MILLER, J. This is an action to determine conflicting claims to real property. The plaintiffs claim title under the will of Peter A. H. Jackson, deceased, who is conceded to have been the owner. The defendant claims under letters patent from the state. The lands were sold by the State Comptroller in December, 1895, for taxes assessed against the property for the years 1891 and 1892, returned to the Comptroller by the county treasurer as unpaid. At such sale the state became the purchaser, and the Comptroller, pursuant to statute, conveyed the property to the people of the state by deed dated October 7, 1898, which deed was recorded in the county clerk's office of Richmond county, where the property was situated, on the 2d day of April, 1900. On the 17th day of August, 1900, the plaintiffs presented a petition to the Board of Land Commissioners of the State of New York, setting forth that they were the owners in fee simple of the property, that the same had been sold and bid in by the state, and that the title thereto was then in

the state, and requesting said board to advertise the said land for sale, and to take the usual procedure required in such case, and deposited with the State Treasurer the sum of $25 to cover cost of advertising said parcel for sale. Thereupon, pursuant to notice duly published according to the statute and the rules of said board, said land was sold at public sale on the 19th day of December, 1900, and the defendant, being the purchaser at such sale, received the patent aforesaid. The land is unoccupied land. The action was begun on the 7th day of February, 1901. It was claimed on the trial by the plaintiffs that the assessment was void because it did not contain a certificate of the assessors that the tract was not subdivided, or that they could not ascertain the subdivisions, as provided by subdivision 5 of section 29 of the tax law (Laws 1896, p. 807, c. 908). The trial court held that this defect was an irregularity which plaintiffs were precluded from asserting by section 131 of the tax law (page 841), which provides that after two years from the date of the conveyance by the Comptroller the presumption of regularity becomes conclusive, and directed judgment for the defendant. Thereafter the plaintiffs moved for a new trial on the ground of newly discovered evidence, and they appeal to this court from the order denying such motion, and also from the judgment rendered in the action. The notice of motion and the order appealed from distinctly state that the motion is made on the ground of newly discovered evidence. The appellants insist, however, that it should also be treated as having been made pursuant to section 1646 of the Code of Civil Procedure, which provides that a new trial in such an action as this may be granted, in the discretion of the court, in the interest of justice.

The plaintiffs claim to have discovered since the trial that the signatures to the verification of the roll of 1890 on file in the office of the bureau for the collection and assessment of arrears in the county of Richmond are all in the same handwriting, from which the inference is sought to be deduced that the assessors never subscribed the oath. There is no evidence that the roll examined was the original, except that the person who makes the affidavit states that he was so informed by the deputy collector who was in charge of said office at the time the affiant made the examination, on the 6th day of October, 1902. It is to be observed that, when the assessment complained of was made, Richmond county was not a part of Greater New York; and the statute provided that the assessors should make two copies of the roll, one to be retained by them, and the other to be filed in the office of the town clerk, the original assessment roll to be delivered to the supervisor. Section 38, c. 908, p. 811, of the tax law. The board of supervisors, after the equalization of the assessments, correction of errors, and levy of the tax, are required to deliver the corrected assessment roll, or a fair copy thereof, to the collector of the tax district. Section 56, c. 908, p. 816, Id. The clerk of the board of supervisors is required to transmit an abstract of the tax rolls to the county treasurer. Section 59, c. 908, p. 818, Id. There is no evidence, therefore, that the roll

which found its way into the office of the bureau for the collection and assessment of arrears after the consolidation with the greater city was the original. The statement of the deputy in charge of such office in 1902 that it was such original can have no probative force. In view of the presumption that these officers discharged their duty in the manner required by law, the presumption would be, in the absence of some proof to overcome it, that the roll inspected was a copy. No reason is given why the affidavit of the assessors or of the officer who administered the oath was not obtained. It ought not to have been difficult to have produced some evidence tending to show whether the roll inspected was an original or a copy, and certainly, if no such evidence could be produced, effect would have to be given to the presumption to be indulged in in such case. If all of the evidence claimed to have been discovered were produced on a new trial, it would fall far short of establishing the fact relied upon, to wit, that the oath to the original assessment roll was not subscribed by the assessors, even conceding that such fact, if established, would enable the plaintiffs to prevail. There-fore, treating the motion as having been made on the ground of newly discovered evidence, and passing the very serious objection that, this being a public record accessible to the plaintiffs, upon which they relied to defeat the defendant's claim of title, in the exercise of due diligence they should have discovered the evidence before trial, the motion was properly denied, because the evidence presented is not sufficient to change the result if a new trial were granted.

Treating the motion as having been made under section 1646, no fact is presented tending to indicate that the interests of justice require a new trial, unless there be some error disclosed in the record which requires a reversal of the judgment. The facts are practically undisputed, and the sole question presented by the record is whether the plaintiffs are now in a position to assert that the proceedings resulting in the sale and the issuance of the letters patent to the defendant were void by reason of the defect in the original assessment roll to which reference has been made; and it may be observed that even though the alleged newly discovered evidence were in the case, and warranted a finding that, while the oath attached to the roll was sworn to by the assessors, it was not signed, the plaintiffs would still be in no better position, because we may assume that the failure of the assessors to certify that the land assessed was not subdivided rendered the assessment invalid, and constituted as serious a defect as the failure to subscribe the oath. Although the Legislature might in the first instance have dispensed with either of these requirements, having imposed them, a substantial compliance therewith was necessary to make a valid assessment; but, although the failure to comply with some statutory requirement has frequently been referred to as a jurisdictional defect, the assessors had jurisdiction to assess the property. The difficulty was that in the exercise of that jurisdiction they committed irregularities which undoubtedly invalidated the assessment.

The distinction between jurisdictional defects and irregularities is clearly pointed out by Judge Finch in Ensign v. Barse, 107 N. Y. 329, 14 N. E. 400, 15 N. E. 401; and although Judge Ruger, in People v. Turner, 117 N. Y. 227, 234, 22 N. E. 1022, 1025, 15 Am. St. Rep. 498, says, "An omission by the assessors to hold meetings for the review of their assessments, and to give notice therefor as required by statute, is a jurisdictional defect," Judge Gray, in People v. Turner, 145 N. Y. 451, 457, 40 N. E. 400, 401, says:

"Some confusion of thought may be occasioned by the unguarded language of Chief Judge Ruger in People v. Turner, 117 N. Y. 227, 22 N. E. 1022, 15 Am. St. Rep. 498, who speaks of the irregular proceedings by the assessors as jurisdictional defects. But it is very clear that he did not intend the full force of that expression, and that he used those words in the sense in which they were used by Judge Finch in Ensign v. Barse, 107 N. Y. 329, 14 N. E. 400, 15 N. E. 401."

Where the party is not precluded from asserting the invalidity of the assessment, it is quite immaterial whether the defect be treated as jurisdictional or as an irregularity, because in either case the assessment is wholly invalid, for the reason that the right to take property for taxes is purely statutory; and this doubtless accounts for the confusion between jurisdictional defects and irregularities in cases where it was quite immaterial whether the defect was treated as jurisdictional or as an irregularity. Section 131 of the tax law makes the conveyance of the Comptroller conclusive after two years from its date. That this is a statute of limitation, and is a bar to an action whether founded upon jurisdictional defects or mere irregularities, is settled by Meigs v. Roberts, 162 N. Y. 371, 56 N. E. 838, 76 Am. St. Rep. 322, but the appellants insist that section 131 is limited by section 132, which, so far as material to the question here, provides that "such conveyances and certificates * * * shall be subject to cancellation, by reason of the payment of such taxes, or by reason of the levying of such taxes by a town or ward having no legal right to assess the land on which they are laid, or by reason of any defect in the proceedings affecting the jurisdiction upon constitutional grounds, on direct application to the Comptroller, or in an action brought before a competent court therefor"; and it is also provided, "in the case of the sale of eighteen hundred and ninety-five and of all sales hereafter held, that such application shall be made, or such action brought, within five years from the expiration of the period allowed by law for the redemption of lands sold at the particular sale sought to be canceled"; and they therefore assert that the action was properly brought within the five years specified. It is to be observed that, while section 131 makes the deed conclusive after two years from its date, section 132 permits an action to be brought for cancellation within five years from the expiration of the period allowed by law for redemption, for the three grounds stated (first, payment of the taxes; second, levying of the taxes by a town having no legal right to assess the land; third, by reason of any defect in the proceedings affecting the jurisdiction upon constitutional grounds) ; and it is urged that the defect complained of here is

a defect affecting the jurisdiction upon constitutional grounds. We may assume that section 132 limits section 131, and extends the statute of limitation in the three cases mentioned; still the two sections should be construed together, so as to harmonize both, if possible, and, if it be urged that every noncompliance with the statute in any substantial respect is such a defect as constitutes the taking of property without due process of law, then every defect, whether termed jurisdictional or an irregularity, merely, would be a defect in the proceedings affecting the jurisdiction upon constitutional grounds. Certainly this could not have been the legislative intent, else there would be no case in which the two-years limitation provided by section 131 would not be extended to five years by section 132. It was held in Wallace v. McEchron, 176 N. Y. 424, 68 N. E. 663, that the failure of the Comptroller to comply with the statute requiring him to furnish a statement to any person requiring it of the taxes, interest, and charges due on any piece of land, was not a defect in the proceedings affecting the jurisdiction on constitutional grounds, although it avoids a sale thereafter made; and we think the defect complained of here was not such a defect, but that the two-years limitation provided by section 131 applies. As these lands were unoccupied, the question as to the effect of the statute of limitations upon the rights of an owner in possession is not involved.

But if we are wrong in this view, we think that the plaintiffs are estopped from asserting the invalidity of the proceedings resulting in the deed to the defendant, and that they have waived any irregularities in such proceedings. A party may even waive constitutional provisions designed for his protection. Phyfe v. Eimer, 45 N. Y. 102. And he may be estopped by his acts from asserting absence of authority or the invalidity of a proceeding. People v. Fire Association of Phila., 92 N. Y. 311, 326, 44 Am. Rep. 380; Vose v. Cockcroft, 44 N. Y. 415; McNeil v. Tenth National Bank, 46 N. Y. 325, 7 Am. Rep. 341; Sherman v. McKeon, 38 N. Y. 266. In this case the plaintiffs could have applied to the Comptroller for a cancellation of the tax sale. Instead, they waited five years after the sale, and then filed a petition requesting the land board to sell the land at public sale; thereby inducing the defendant to bid for the property upon the theory that the plaintiffs did not question the regularity of the proceedings. If the claim of the appellants' be sustained, the defendant will lose the $605 which she paid, because she cannot recover it back from the state. It will not do for the plaintiffs to assert that they did not know of the irregularity. The proceedings were matter of public record. The statute gives ample time within which to apply to the Comptroller for a cancellation, and the plaintiffs should have ascertained whether they desired to question the regularity of the proceedings before requesting a sale.

The appellants insist that there can be no estoppel against the plaintiffs, who hold as trustees, because by the terms of the will they were prohibited from selling the property without the approval

of the beneficiaries. Did the question relate to the effect of a conveyance by the plaintiffs, without such approval, to one chargeable with notice of the powers of the trustees, the authorities cited would be in point. The trustees were the owners in fee of the property at the time of the tax sale. Thereafter the title was apparently in the state. No one will question their authority to attempt to save the property for their estate. They evidently believed at the time that the better course was to ask the state to sell; expecting, undoubtedly, as is usual in such cases, that they would be able to purchase the property at the sale for the amount of the taxes, charges, etc. In this they were mistaken, as the defendant overbid their agent. They could waive irregularities in the proceeding, and, having actually procured the sale to be made, they are now estopped from asserting that they made a mistake in so doing.

The order denying a motion for a new trial should be affirmed, with costs. All concur.