PEOPLE ex rel. McGUINNESS v. LEWIS, County Treasurer.

(Supreme Court, Appellate Division, Second Department. June 12, 1908.)

1. TAXATION—TAX DEEDS—CANCELLATION—STATUTORY PROVISIONS.

Tax Law, Laws 1896, p. 841, c. 908, § 131, provides that after one year from the time of sale for taxes the Comptroller shall execute a conveyance of unredeemed lands, which shall vest an absolute estate in fee and which shall be presumptive evidence that the sale and all proceedings prior thereto from and including the assessment, and all notices required previous to the expiration of the time for redemption were regular, and that after two years from the date of such conveyance, such presumption shall be conclusive. Section 132, headed "Effect of Former Deeds," provides that every such conveyance theretofore executed by the Comptroller which has been recorded for two years shall be similarly conclusive, but that such conveyances may be canceled because of the payment of such taxes, the levying of such taxes by a town or ward without legal right to assess the land, or of any defect in the proceedings affecting the jurisdiction upon constitutional grounds, on direct application to the Comptroller, or in an action brought therefor, provided that such application be made, or action brought, in the case of sales held prior to 1895, within one year from the passage of the act, and in the case of the sale of 1895 and all sales thereafter within five years from the expiration of the period allowed for redemption. *Held*, that the words "such conveyance," wherever used in section 132, relate to the conveyances executed by the Comptroller, and that the enumerated defects excepted from the provisions of the section and the appended proviso enacting a statute of limitations in respect thereto, do not apply only to "former deeds," but apply to all conveyances by the Comptroller before or after the passage of the act.

**2. SAME.**

Tax Law, Laws 1896, p. 841, c. 908, § 132, making a Comptroller's deed subject to cancellation for "any defect in the proceedings affecting the jurisdiction upon constitutional grounds," by that phrase, means jurisdictional defects.

**3. SAME—ASSESSMENT—AFFECTING JURISDICTION TO SELL.**

Under Tax Law, Laws 1896, p. 826, c. 908, § 89, providing that if a tax on land, not assessed as nonresident, is returned as unpaid, the treasurer shall furnish to a supervisor of the tax district an abstract of the tax roll relating to such unpaid taxes, and such supervisor before delivery of the assessment roll to the collector shall add a description of such land to the assessment roll in that part thereof relating to nonresident lands, there is no jurisdiction to sell, where taxes on resident lands are returned unpaid, unless the assessment be first laid against the land as such.

**4. SAME.**

An assessment of a tract of land, subdivided into lots and owned in part by a resident of the tax district and in part by a nonresident as one parcel to the nonresident, constituted no notice to the owner that his land was liable to be sold for unpaid taxes within Tax Law, Laws 1896, p. 810, c. 908, §§ 35, 36, providing for notice of the completion of the assessment roll and the hearing of complaints.

Certiorari by the people, on the relation of Mary McGuinness, to review a refusal of Charles F. Lewis, as county treasurer, to set aside a cancellation of a tax deed. Determination of the county treasurer confirmed.

Argued before WOODWARD, JENKS, GAYNOR, RICH, and MILLER, JJ.

Ralph G. Miller (Robert L. Luce, on the brief), for relator.

George B. Stoddart, for respondent.

MILLER, J. On the 23d day of February, 1904, the county treasurer of Nassau county executed a deed to the relator of land sold for taxes, which was recorded in the office of the clerk of Nassau county on the 31st day of March, 1904. On the 9th day of October, 1906, a petition for the cancellation of said deed and tax sale was presented to said county treasurer by a person claiming to be the owner of a part of the land thus sold and conveyed, and such proceedings were had thereupon that on the 28th day of February, 1907, said county treasurer canceled said tax sale and deed, whereupon an application was made to him by his grantee to set aside said cancellation pursuant to section 141 of the tax law (chapter 908, p. 847, Laws 1896, as amended by chapter 392, p. 323, Laws 1897), and that application was on the 1st day of October, 1907, denied. The relator now seeks by certiorari to review the denial of her said application.

Said section 141 provides that the Comptroller shall upon the application of any one aggrieved thereby set aside any cancellation of sale made by him in either of the following cases:

"First. When such cancellation was procured by fraud or misrepresentation. Second. When it was procured by the suppression of any material fact bearing on the case. Third. When it was made under a mistake of fact. Fourth. When such cancellation was made upon an application which the comptroller, or any of his predecessors in office, had no jurisdiction or legal right to entertain at the time of such cancellation."

The provisions of the statute applicable to tax sales made by the Comptroller also apply to sales made by county treasurers. Tax Law, § 157. The relator contends that the county treasurer did not have jurisdiction or a legal right to entertain the application for cancellation, for the reason that her deed was executed more than two years before said application was made and was after the expiration of said two years conclusively presumed to be valid. The respondent contends that that reason is not included within any of the four subdivisions of said section 141. Prior to 1896 an owner could not apply for the cancellation of a tax sale. See People ex rel. Millard v. Roberts, 151 N. Y. 540, 45 N. E. 941, and cases cited. The state and the purchaser were the only ones interested within the meaning of the various statutes relating to that subject, and the owner's remedy was an action in equity. For that reason said statutes contained no provisions for giving notice of the application. Said act of 1896 provided by section 140 that an application for cancellation might be made by the owner of lands in any county not including a portion of the forest preserve, but by an evident oversight failed to provide for any notice to interested parties. That omission was cured by said chapter 392, p. 323, Laws 1897, which added said fourth subdivision to said section 141, and a further provision for a notice of the application to set aside the cancellation to the person upon whose application the cancellation was made, or his heirs or grantees. The scheme thus provided was that the sale might be canceled without notice upon the application of any interested person, including the owner, and that, if any person was aggrieved thereby, he could apply on notice to set aside said cancellation. It is plain, therefore, that, if the relator's deed was conclusively presumed to be valid, the respondent did not have a legal right to entertain the application for cancellation within the meaning of said section 141. An owner in possession, actual or constructive, may not be required to take notice of the running of the statute of limitations. See Joslyn v. Rockwell, 128 N. Y. 334, 28 N. E. 604; People v. Turner, 145 N. Y. 451, 40 N. E. 400; Meigs v. Roberts, 162 N. Y. 371, 56 N. E. 838, 76 Am. St. Rep. 322; People v. Ladew, 189 N. Y. 355, 82 N. E. 431. But an owner seeking an affirmative remedy given by the tax law must bring his case within the provisions of the law, and, unless he makes application for a cancellation within the time prescribed by law, the tax deed cannot be canceled by the Comptroller or county treasurer, but the holder of it must be left with whatever rights the possession of it gives him. It appears by the return that the property conveyed by the tax deed was a tract of land subdivided into lots; that at the time of the assessment which was the basis of the tax sale a part of said property was owned by Henry McAllister, who applied for said cancellation and who was at the time of said assessment a resident of the tax district in which the land was situated; and that another part thereof was owned by Alfred C. Meade, a nonresident of said district, but that it was all assessed as one parcel to said Alfred C. Meade.

Doubtless the respondent canceled the deed and tax sale on the assumption that the defect complained of affected "the jurisdiction upon constitutional grounds" within the meaning of section 132 of the tax law, and that the owner could apply for cancellation at any time

within five years from the execution of the tax deed. We are thus required to determine whether said section 132 qualifies section 131, and, if so, what the Legislature meant by "a defect in the proceedings affecting the jurisdiction upon constitutional grounds." In the case of Jackson v. Rowe, 106 App. Div. 65, 94 N. Y. Supp. 568, affirmed Id., 188 N. Y. 641, 81 N. E. 1167, we assumed without deciding that said section 131 was qualified by section 132, but held that the defects involved in that case were not included within the three exceptions of said section 132. It has since been held by this court in the Fourth Department that the assumption which we made in Jackson v. Rowe, supra, was correct. Adirondack League Club v. Keyes, 122 App. Div. 178, 106 N. Y. Supp. 963. Mr. Justice Williams in that case suggested that there were difficulties not yet solved by any decision in determining the meaning of the language "any defect in the proceedings affecting the jurisdiction upon constitutional grounds." Both questions are directly involved in the case before us. Said section 131 provides, in substance, that after the expiration of one year from the time of sale the Comptroller shall execute a deed which shall vest in the grantee an absolute estate in fee simple, which shall be presumptive evidence that the sale and all proceedings prior thereto from and including the assessment of the land sold, and that all notices required by law to be given previous to the expiration of the time allowed by law for the redemption thereof were regular and in accordance with all the provisions of law relating thereto, and that after two years from the date of the conveyance said presumption shall be conclusive. Said section 132 is headed "Effect of Former Deeds," and provides, in substance, that all conveyances heretofore executed which have for two years been recorded in the office of the clerk of the proper county shall be conclusive evidence that the sale and all proceedings prior thereto, etc., were regular, but that all such conveyances shall be subject to cancellation on a direct application to the Comptroller or in an appropriate action therefor, upon three grounds, viz.: (1) By reason of the payment of such taxes; (2) by reason of the levying of such taxes by a town or ward having no legal right to assess the land on which they are laid; or (3) by reason of any defect in the proceedings affecting the jurisdiction upon constitutional grounds, and appended to the section is the following proviso, to wit:

"Provided, however, that such application shall be made, or such action brought, in the case of all sales held prior to the year eighteen hundred and ninety-five, within one year from the passage of this act; and in the case of the sale of eighteen hundred and ninety-five and of all sales hereafter held, that such application shall be made, or such action brought, within five years from the expiration of the period allowed by law for the redemption of lands sold at the particular sale sought to be canceled."

Section 131 is prospective. It enacts a rule of evidence in respect of future deeds, and, so far as the question now under consideration is concerned, a statute of limitations of two years. It contains no provision for cancellation for the plain reason that section 140, which is also prospective, deals with that subject, and authorizes a cancellation of tax sales, certificates, and deeds for any reason affecting their validity, which may be made by the Comptroller upon his own mo-

111 N.Y.S.—26

tion, or, if the deed has been executed, upon the application of the
purchaser of land in counties including a part of the forest reserve,
and also of the owner as well as the purchaser of land in the other
counties of the state. Said section 132 is retrospective. It enacts
a rule of evidence in respect of former deeds, and in its present form
was obviously intended to be a curative act in respect of irregulari-
ties which the Legislature supposed could thus be cured. In view
of the heading of said section 132 and of the fact that only deeds
theretofore given are included within its general purview, it might
seem, at first blush, that the enumerated defects excepted from the
provisions of the section and the appended proviso which enacts a
statute of limitations in respect of them applied only to "former
deeds," particularly in view of the fact that said sections 131, 140,
and 141 provide a complete and harmonious scheme respecting fu-
ture deeds. Said act went into effect May 27, 1896. At that time
deeds for the sale of 1895 had recently been executed, if at all, and,
if the proviso was intended to apply only to former deeds, the part
of it prescribing the limitation of five years must have been inad-
vertent, particularly the reference to sales "hereafter held." The
usual office of a proviso is "to make exception from the enacting
clause, to restrain generality, and to prevent misinterpretation." White
v. United States, 191 U. S. 545, 551, 24 Sup. Ct. 171, 48 L. Ed. 295.
Ordinarily, therefore, a proviso must be construed with reference
to the clause to which it is appended, and does not have the effect
of limiting other sections of the same act. Ex parte Partington, 6
Q. B. 649; Savings Bank v. United States, 19 Wall. (U. S.) 227,
22 L. Ed. 80; Cushing v. Worrick, 9 Gray (Mass.) 382; Spring v.
Olney, 78 Ill. 101; County of Lehigh v. Meyer, 102 Pa. 479; Calla-
way v. Harding, 23 Grat. (Va.) 542. Where the words of a proviso
construed with reference to the subject to which they refer are mean-
ingless, they may be rejected altogether. Mullins v. Treasurer, L.
R. 5, Q. B. 170. It will be presumed that the exceptions enumerated
in a proviso would have been included by the general language of
the enacting clause but for the exception on the maxim "Expressio
unius exclusio alterius" (Tinkham v. Tapscott, 17 N. Y. 141, 152,
and cases cited), and a proviso will prevail over the general pur-
view (Matter of New York and Brooklyn Bridge, 72 N. Y. 527). A
proviso may have been intended as an independent enactment. White
v. United States, supra. In every case the form must yield to the
intention, and, as the intention of the Legislature has not been plain-
ly expressed, we have the right to consider everything having a le-
gitimate bearing on the question, and must search for a construc-
tion which will give effect to all the language used. The antece-
dents of the words of the proviso, "such application" and "such ac-
tion," are to be found in the preceding clause, which provides for the
cancellation by action or upon direct application to the comptroller
of "such conveyances and certificates." This is the same expres-
sion found at the beginning of the section, and I think that both
have the same antecedent, and that the words "such conveyance"
wherever used in section 132 may be held to relate to the convey-

ances referred to in the earlier parts of the act—i. e., conveyances executed by the comptroller—in this case, of course, by the county treasurer, as the statute applicable to sales by the Comptroller applies also to sales by county treasurers. Upon that construction said proviso applies to all conveyances executed by the Comptroller before or after the passage of the act, and all its language may be given effect.

The history of the attempts to cure defects in tax deeds or to bar remedies because of them sheds light on both questions before us. The statutes relating to the collection of taxes on lands of nonresidents and the sale of such land for unpaid taxes were revised and consolidated by chapter 427, p. 781, Laws 1855. Section 65 (page 793) thereof provided that future conveyances should be presumptive evidence of the regularity of the proceedings upon which they were founded. Said section was amended by chapter 448, p. 758, Laws 1885, and, as amended, provided, in effect, respecting deeds that all conveyances theretofore executed after having been recorded for two years in the office of the clerk of the proper county should, six months after the act took effect, be conclusive evidence that the sale and all proceedings prior thereto, etc., were regular, and that all other conveyances theretofore or thereafter executed should be presumptive evidence of regularity and conclusive evidence thereof after the expiration of two years from the date of recording such conveyances. Said section also contained the further provision that all such conveyances should be subject to cancellation on a direct application to the Comptroller or in an appropriate action therefor by reason of the payment of such taxes or the levying of such taxes by a town or ward having no legal right to assess the land on which they were laid. By section 2 of said amendatory act its application was confined to the forest preserve counties. The Legislature had provided by chapter 283, p. 482, Laws 1885, for the creation of a forest commission and a forest preserve. It is well known that the state then claimed to own many tracts of land in said counties by virtue of tax sales; in fact, a very considerable portion of the unoccupied forest lands in said counties had been sold for taxes. It was easy to show some defect or irregularity in most of the tax titles, because of the lax methods which prevailed in said counties, and speculators who acquired the original titles for nominal sums were able successfully to attack the tax titles. The Legislature undertook by establishing a rule of evidence to interpose the bar of a short statute of limitations in respect of all deeds that had for two years been recorded, and to enact a statute of limitations of two years from the date of record in respect of future deeds and unrecorded former deeds. It may not have been thought wise policy to attempt to apply a conclusive rule of evidence to the two exceptions enumerated, but it is more likely that the two cases excepted were deemed to be beyond the reach of either a curative act or a statute of limitations. While it may be doubted whether the provision for cancellation upon direct application to the Comptroller afforded the owner a remedy (People ex rel. Wright v. Chapin, 104 N. Y.

369, 5 N. E. 64, 11 N. E. 383), the remedy by action in equity was preserved without any limitation of time, and the exceptions applied both to former and to future deeds. The words "such conveyances," which were retained in said section 132, plainly referred to all conveyances theretofore or thereafter executed by the Comptroller. In 1891 it was deemed wise to extend the operation of said act of 1885 to all counties of the state, except Cattaraugus and Chautauqua, respecting which there was a special statute, and chapter 217, p. 411, Laws 1891, having that effect, was passed. In October, 1891, Joslyn v. Rockwell, 128 N. Y. 334, 28 N. E. 604, was decided. In that case the court said that the act of 1885 did not differ in any material respect from the act considered in Ensign v. Barse, 107 N. Y. 329, 14 N. E. 400, 15 N. E. 401, a curative act held to be good as to irregularities only, and strongly intimated that, if said act was intended to apply to jurisdictional defects, it was unconstitutional. In 1893 a new act in relation to the sale and redemption of lands sold for taxes was passed (chapter 711, p. 1761, Laws 1893). That act repealed section 65 of the act of 1855, but did not in terms repeal the acts of 1885 or 1891. At that time there had been no modification of the views of the Court of Appeals as expressed by Judge Peckham in the Joslyn Case, and the Legislature apparently supposed that it could not deal with defects in former deeds, which were beyond the reach of a curative act. For that reason the provisions of said act of 1885 except as modified were re-enacted in separate sections—sections 11 and 12—the former a statute of limitations of two years relating to future deeds, and the latter a curative act relating to former deeds, and a third exception was added to meet the decision in Joslyn v. Rockwell, supra; i. e., "any defect in the proceedings affecting the jurisdiction on constitutional grounds." I think it is reasonable to suppose that the words "such conveyance" used in the act of 1885 and retained in said section 12 of the act of 1893 meant the same in both instances; i. e., any conveyance executed by the Comptroller. It is not reasonable to suppose that the Legislature intended to authorize an action for cancellation of former deeds on the three grounds specified without prescribing any limitation of time, and that future deeds should be conclusive on all grounds after two years. That was plainly not the intention when all the provisions on the subject were embraced in one section in the act of 1885, and the separation of said provisions in two sections because the Legislature supposed that it could deal with former deeds by a curative act as effectually as by a statute of limitations does not indicate any intention to depart from the original scheme of allowing an action to be brought upon the three grounds stated at any time to cancel either future or former deeds. This explains how it happened that what was originally a statute of limitations in respect of former deeds became essentially a curative act, as pointed out by Judge Cullen in Wallace v. McEchron, 176 N. Y. 424, 68 N. E. 663. In 1896 the tax laws were revised and consolidated into one chapter. Chapter 908, p. 795, Laws 1896. Sections 11 and 12 of the act of 1893 as modified became said sections 131 and 132 of the present

tax law. Meanwhile the Court of Appeals, per Judge Gray, had said that the act of 1885 was essentially a statute of limitations. People v. Turner, supra. While that case involved irregularities only, the opinion of the court may have encouraged the Legislature to try the experiment of enacting a statute of limitations respecting jurisdictional defects, and the proviso quoted, supra, was added. The supposition that a statute of limitations might reach even jurisdictional defects was justified by the later decision in Meigs v. Roberts, supra. Had that decision been made prior to 1893, the Legislature would doubtless have accomplished its purpose without throwing the whole subject into confusion. The act of 1885, as we now know, six months from its passage barred an action to set aside a recorded tax deed of lands in the forest preserve counties for either irregularities or jurisdictional defects except the two expressly enumerated, and six months after the passage of the act of 1891 such an action in respect of former recorded tax deeds in the other counties of the state was barred; and, respecting other tax deeds, there was at all times a prospective statute in force applying to the forest preserve counties after 1885 and to other counties after 1891. But, when the acts of 1893 and 1896 were passed, there was doubt of the power of the Legislature to deal with the subject, and it was therefore doubtless deemed wise to retain in the statute some provision respecting former deeds. I think that by section 12 of the act of 1893 and section 132 of the act of 1896 the Legislature intended to pass a curative act applying to every irregularity within the reach of such an act, and to except from the provisions of those sections, as well as from the provisions of section 11 of the act of 1893 and section 131 of the act of 1896, actions based on the three specified grounds, which were supposed to include every ground not within the reach of a curative act, and in respect of those to enact a statute of limitations by the proviso quoted, supra. I think it must follow that the phrase "any defect in the proceedings affecting the jurisdiction on constitutional grounds" was intended to include every jurisdictional defect; otherwise, it seems to me the words are unintelligible. The Constitution does not contain express provisions on the subject. Judge Peckham had said in Joslyn v. Rockwell, supra, that a statute making a tax deed after a certain time conclusive evidence of every fact which ought to exist in order to create a good title under such deed would be unconstitutional if it applied to jurisdictional defects; and, as it is plain that the words quoted were added to the statute to meet that decision, they should be construed to include every jurisdictional defect.

There has been much discussion respecting jurisdictional defects and irregularities in tax proceedings. I shall not hazard the risk of further confusing the subject by any discussion beyond the point actually involved in this case. Resident lands were sold on an assessment against a nonresident. The lands were not assessed as nonresident lands; the assessment being laid against an individual, as the return states that the land was assessed to Alfred C. Meade. Such a defect is plainly a jurisdictional defect, as the Comptroller

or the county treasurer, as the case may be, had no jurisdiction to sell the land for taxes, unless the assessment was laid in form against the land and not an individual owner. Where taxes on resident real property are returned as unpaid, an assessment must first be laid against the land as such, in the part of the assessment roll relating to nonresident lands, before a sale for such unpaid taxes can be made. See section 89. The statute provides for notice of the completion of the assessment roll and the hearing of complaints. See sections 35 and 36. Such an assessment as was made in this case would constitute no notice to the owner that his land was liable to be sold for unpaid taxes. It follows, therefore, that the five-year statute of limitations applied, that the tax deed and tax sale were properly canceled, and that the application of the relator to set aside said cancellation was properly denied.

The determination should be confirmed, with costs.

Determination confirmed, with $50 costs and disbursements. All concur.