GEORGE N. OSTRANDER and HARRIET E. OSTRANDER, Respondents, *v.* FRANK L. BELL and STELLA PHELPS BELL, Wife of FRANK L. BELL, Respondents, Impleaded with THE PEOPLE OF THE STATE OF NEW YORK, Appellant.

Third Department, December 28, 1921.

Partition — unoccupied, wild forest lands — title in plaintiff to one-half interest established through inheritance and quitclaim deed — Comptroller's tax deed of land to State void where lands withdrawn from sale — adverse possession of lands by State cannot be based on publication of Comptroller's notice pursuant to Tax Law, § 133 — deeds to plaintiff and individual defendant after Comptroller's tax deed to State and publication of said notice not champertous under Real Property Law, § 260 — publication of said notice did not start running of Statute of Limitations — adverse possession by State not established — Legislature cannot deprive owner of land by declaring void deed conclusive evidence of its validity.

In an action for partition of a portion of lot 19 in the Oxbow Tract, Hamilton county, it appeared that the plaintiff and the individual defendant each owned an undivided one-half interest in said lot; that the lot was advertised for sale by the Comptroller at the 1877, 1881 and 1885 tax sales, but when the lot was reached it was withdrawn from the sale and no public bidding was permitted and no sale had; that following each

of said tax sales the Comptroller executed and delivered to the State a conveyance in the usual form of a tax deed of said lot and each deed was recorded; that the lands in question were wild, vacant, forest lands and there was no evidence of any physical occupation, nor of inclosure, nor of use of the premises for cultivation or cutting of wood, nor of use in any manner customary in that locality; that the Comptroller published a notice of possession pursuant to section 13 of chapter 711 of the Laws of 1893, now section 133 of the Tax Law, in which was included said lot 19.

*Held*, that though the description contained in the conveyances through which plaintiff claimed one source of title was too indefinite in that it described the lands merely as " or any other lands in Hamilton county," he still had good title by inheritance from his mother and brother and by quitclaim deed from his sister of her interest in said lands.

The Comptroller's tax deed given to the State was absolutely void for any purpose as the lands were withdrawn from the sale.

The said tax deed not being valid the State did not hold " title, from a tax sale or otherwise," within the meaning of section 133 of the Tax Law, and, therefore, the publication under said section of notice containing lot 19 was not sufficient on which to base an adverse possession by the State, or a finding that a deed of the premises given by another thereafter was champertous, or to start the running of the Statute of Limitations.

The defense by the State that the deeds to the plaintiff and the individual defendant are champertous and void must fail for two reasons: *First*, the State is not " a person," within the meaning of section 260 of the Real Property Law, which provides that a " grant of real property is absolutely void, unless the same shall be made to the People of the State of New York, if at the time of the delivery thereof, such property is in actual possession of a person claiming under a title adverse to that of the grantor," and, *second*, though section 133 of the Tax Law provides that on compliance therewith by the publication of notice the Comptroller shall be deemed to be in the actual possession of the lands, this possession is not of the nature required by said section 260 of the Real Property Law.

To establish title by adverse possession the State must show all the facts which must be shown by an individual, and so its defense of title by adverse possession fails, since it was not shown that the premises were ever occupied on behalf of the State, nor was it shown that there had been an open and notorious use of the premises, within the meaning of sections 369 and 370 of the Code of Civil Procedure.

The " occupation and possession " referred to in these sections of the Code of Civil Procedure is an actual, not a presumed, or constructive, or fictitious occupation, not such a possession as is deemed under the publication of the Comptroller's notice to be in him.

The defense of the Statute of Limitations under sections 131 and 132 of the Tax Law cannot prevail, since the provision of section 132, that a deed from the Comptroller may be canceled " by reason of any defect in the proceedings affecting the jurisdiction upon constitutional grounds," gives

no right to the individual parties to maintain an action to cancel the deed from the Comptroller to the State on the ground that said deed was void because there had been no sale of the land by the Comptroller, and so, not having had a right to their day in court, in which to assert and enforce such rights as they had in this lot, the Statute of Limitations has not run against them.

Furthermore, the Legislature cannot deprive an owner of his land by declaring that a void deed shall be conclusive evidence of its own validity, or of the title to those lands in the grantee in a void deed.

APPEAL by the defendant, The People of the State of New York, from an interlocutory judgment of the Supreme Court, entered in the office of the clerk of the county of Hamilton on the 13th day of July, 1921, upon the decision of the court rendered after a trial by the court without a jury in an action for partition.

*Charles D. Newton, Attorney-General* [*William T. Moore* of counsel], for the appellant.

*George N. Ostrander* and *Frank L. Bell*, for the respondents.

VAN KIRK, J.:

The plaintiff Harriet E. Ostrander is the wife of George N. Ostrander and the defendant Stella Phelps Bell is the wife of Frank L. Bell; each is made a party on account of inchoate dower right interests. The State is properly made a party. (Code Civ. Proc. § 1594.)

The premises in question are lot 19, in the Oxbow Tract, Hamilton county, except fifty-six acres, the northwest corner of the lot, which it is conceded belongs to the State and is not affected by the judgment herein. When we speak of the premises as lot 19, we mean the lot (which contains two hundred and seventy-four acres) except the said fifty-six acres.

The court has found the facts as alleged in the complaint; that the plaintiff Ostrander and defendant Bell each owns an undivided half interest in the lot; that this lot was advertised for sale by the Comptroller at the 1877, 1881 and 1885 tax sales; at each sale, when lot 19 was reached, it was withdrawn from sale, no public bidding was permitted and no sale had; following each of these sales, however, the Comptroller executed and delivered to the State a conveyance in the usual form of a

tax deed following a sale of the lands conveyed and each deed is recorded. The lands are wild, vacant, forest lands, and there is no evidence of any physical occupation, nor of inclosure, nor of use of the premises for cultivation or cutting of wood, nor in any manner customary in that section.

In addition to denials the State has set forth in its answer three separate affirmative defenses: (1) The short Statute of Limitations under chapter 908 of the Laws of 1896 (Tax Law, § 132); (2) that the conveyances to Ostrander and Bell were champertous under section 260 of the Real Property Law and section 2032 of the Penal Law; (3) title in the State by adverse possession. Each separate defense is based upon the aforementioned Comptroller's deeds and possession in the Comptroller of the State following the publication, under section 13 of chapter 711 of the Laws of 1893, of the notice of possession in the Comptroller, which notice was published for three weeks commencing December 13, 1894, in a newspaper published in Hamilton county. No other possession in the People of the State is claimed.

Disregarding for the time being the affirmative defenses, the title of the defendant Bell, who acquired the half interest of Lelia E. Marsh in September, 1919, is not questioned. The defendant Ostrander acquired his title as follows: In 1848 the People of the State of New York granted lot 19 to James Mereness; after the death of James Mereness, on August 4, 1885, his executors conveyed the lot to Lelia E. Marsh and Hortense J. Ostrander. In November, 1885, Hortense J. Ostrander executed a deed to Richard H. Pattinson, conveying certain lots in Hamilton county, " or any other lands in Hamilton county," and in December, 1887, George N. Ostrander acquired title by mesne conveyances to these lands so described. The plaintiff claims that this quoted expression included lot 19, inasmuch as the grantor at the time owned a half interest in the lot; but the defendant People of the State of New York claims that the description is too indefinite and is not sufficient to identify or include the lot. However, the plaintiff has title to the half interest of Hortense J. Ostrander in another manner. There was no conveyance by Hortense J. Ostrander of this lot other than by her deed to Richard H. Pattinson. Hortense J. Ostrander died November 16, 1885, intestate and

leaving as her only heirs two sons, George N. Ostrander, the plaintiff, and Edward W. Ostrander, and one daughter, Grace Ostrander, who later married Floyd Signor. Edward W. Ostrander died intestate November 19, 1916, leaving his brother, George N. Ostrander, and sister, Grace Ostrander Signor, his only heirs-at-law. George W. Ostrander, the husband of Hortense J. Ostrander, and the father of the plaintiff George N. Ostrander, died in March, 1898. If then Hortense J. Ostrander did not convey her interest in lot 19 by the deed to Pattinson in 1885, her son, the plaintiff George N. Ostrander, and her daughter Mrs. Signor, succeeded to her title by inheritance. Under date of June 25, 1921, Grace Ostrander Signor, by quitclaim deed, conveyed to George N. Ostrander her interest in lot 19.

There remain then for consideration the three affirmative defenses presented by the People of the State of New York.

Neither affirmative defense can be sustained without the aid of section 13 of chapter 711 of the Laws of 1893, now section 133 of the Tax Law, as follows: "The Comptroller may advertise once a week, for at least three weeks successively, a list of the wild, vacant and forest lands to which the State holds title, from a tax sale or otherwise, in one or more newspapers to be selected by him, published in the county in which the lands are situated, and from and after the expiration of such time, all such wild, vacant and forest lands are hereby declared to be and shall be deemed to be in the actual possession of the Comptroller, and such possession shall be deemed to continue until he has been dispossessed by the judgment of a court of competent jurisdiction."

In the list of wild, vacant and forest land to be so published are those only "to which the State holds title, from a tax sale or otherwise." In this case the only title claimed by the State is under the Comptroller's deeds. But these do not grant a title from a tax sale, since there was no tax sale of these lands preceding the deed. The expression used is, "holds title," not "claims title;" and means more than merely "claims title." It does not necessarily mean a perfect title, but must mean a title which is of some value, that is valid for some purposes; that is good until set aside or a better title is shown in another. We think it cannot mean a title which

is absolutely void, which never had a beginning or an existence. It has been uniformly held that a Comptroller's tax deed, given to the State of lands which had been withdrawn from sale, was absolutely void for any purpose. (*Saranac L. & T. Co.* v. *Roberts,* 195 N. Y. 303; *People* v. *Inman,* 197 id. 200, 205.) The statute does not mean " holds a deed," but it means, as it says, " holds title." It may be conceded that the expression " holds title " would include a title by a deed after a tax sale, but which title was voidable because of some defect in the proceedings which led up to the sale. But we do not think that it can mean a title, the only evidence of which is a deed executed by the Comptroller without authority of law, which is and which has been void since the instant it was signed. That which is void is worthless and cannot be given a value, on which the property of another may be taken, by statutory enactment. If this be a correct view, the publication of the Comptroller's notice, containing this lot 19 in the list, was not sufficient on which to base an adverse possession, or a finding that a deed of the premises given by another thereafter is champertous, or to start running a Statute of Limitations.

The two defenses (champerty and adverse possession) may be further considered together. Section 260 of the Real Property Law (as amd. by Laws of 1909, chap. 481) provides: " A grant of real property is absolutely void, unless the same shall be made to the People of the State of New York, if at the time of the delivery thereof, such property is in actual possession of a person claiming under a title adverse to that of the grantor; * * * ." The defense that the deeds to Ostrander and Bell are champertous and void must fail for two reasons: *First.* The State is not " a person " within the meaning of the statute. (*Saranac L. & T. Co.* v. *Roberts,* 195 N. Y. 303, 323.) *Second.* In that case the court was discussing the Champerty Act (1 R. S. 739, § 147) which is now section 260 of the Real Property Law and possession for the State by the Forest Commission, and the State was claiming that the deeds to the plaintiff in that case were champertous and void because of the possession of the State under a title " adverse to that of the grantor." It had been held in *People ex rel. Turner* v. *Kelsey* (180 N. Y. 24, 26, 27)

that " the Forest Commission, as the representative of the State, has the actual possession of the lands embraced in the Forest Preserve;" that the territory belonging to the State within the Forest Preserve " is made a public park, placed under the care, control and supervision of a commission and watched and guarded by wardens, foresters and game protectors who actually reside upon the preserve and who may arrest violators of the statute in cases specified, without warrant." On page 323 (*Saranac L. & T. Co.* v. *Roberts, supra*) the court said: " That the State was in actual possession, so far as it was possible, may be conceded; but that there was that actual possession by the Commission, as its representative, or agent, which the law demands (See *Crary* v. *Goodman,* 22 N. Y. 170, 173, and *Dawley* v. *Brown,* 79 id. 390, 396) was not the fact. There was no occupancy of the premises. They were wild, vacant, forest lands, control and supervision over which the Forest Preserve Act had conferred upon the Commission. It was in possession, as an agency of the State, for the purpose of executing the policy of the State * * *." This argument applies alike to the possession in the Comptroller after publication of the notice in 1894. An actual, not a constructive, or limited, adverse possession is required by this statute to render a deed void. It must appear that, at the time the deed claimed to be champertous was delivered, the lands were in the actual possession of a person claiming under a title adverse to that of the grantor. It must, therefore, be shown under what title the person in possession claims. He must claim under some specific title which must be disclosed in order that the court may see that it is adverse to that of the grantor in the deed assailed. The purpose of the act of 1893, providing for the publication of· the notice that the Comptroller is in possession, is well understood and recognized. In 1885 and 1893 short Statutes of Limitations were enacted applying to the title under Comptroller's deeds following tax sales, but it was held that these short statutes were not ˙effective because an action could not be prosecuted against the State without its consent, express not implied; that its consent had not been given and consequently any party who claimed title to the lands adversely to the State had not had his day in court; that an action against

the Forest Commission was in fact an action against the State; and that, under chapter 448 of the Laws of 1885, the Comptroller could not set aside a tax sale upon the application of the owner because the statute was intended for the benefit of the purchaser only (*People ex rel. Millard* v. *Roberts,* 151 N. Y. 540; *Saranac L. & T. Co.* v. *Roberts, supra,* 316, 317); that the short Statute of Limitations was not set running until the publication of the Comptroller's notice, and that the purpose of this act (above quoted) was to permit an action to determine the title by a party claiming to own the land as against the State. For this purpose the Comptroller was deemed to be in actual possession of the premises. But his possession was not of the nature required by section 260 of the Real Property Law, " actual possession of a person claiming under a title adverse to that of the grantor." (*Saranac L. & T. Co.* v. *Roberts, supra;* also S. C., 125 App. Div. 333, 343; *Dawley* v. *Brown,* 79 N. Y. 395, 396.) The Code of Civil Procedure declares under what conditions lands " are deemed to have been held adversely," and " what constitutes adverse possession." (§§ 369, 370.) Section 369 provides: " Where the occupant, or those under whom he claims, entered into the possession of the premises, under claim of title, exclusive of any other right, founding the claim upon a written instrument, as being a conveyance of the premises in question, or upon the decree or judgment of a competent court; and there has been a continued occupation and possession of the premises, * * * for twenty years, under the same claim; the premises so included are deemed to have been held adversely; * * *." Section 370 provides: "Adverse possession * * *; what constitutes it. For the purpose of constituting an adverse possession, by a person claiming a title, founded upon a written instrument, or a judgment or decree, land is deemed to have been possessed and occupied in either of the following cases:

" 1. Where it has been usually cultivated or improved.

" 2. Where it has been protected by a substantial inclosure.

" 3. Where, although not inclosed, it has been used for the supply of fuel, or of fencing timber, either for the purposes of husbandry, or for the ordinary use of the occupant."

When the People of the State of New York come into court

to protect or assert a right, they are bound by the same law and subject to the same rules that apply to individual litigants, unless in its express consent it has provided otherwise. " There is not one law for the sovereign and another for the subject." (*People* v. *Stephens*, 71 N. Y. 527, 549; *People ex rel. Graves* v. *Sohmer*, 207 id. 450, 457; *People* v. *N. Y. C. & H. R. R. R. Co.*, 213 id. 136, 140.)

The State must show all of the facts which must be shown by an individual to establish title by adverse possession. In this case the State has not conformed to the requirements of the Code in this respect. There has never been an occupant of the premises on behalf of the State; there has been no " continued occupation and possession " of the lot on behalf of the State. The " occupation and possession " referred to in these provisions of the Code is an actual, not a presumed, or constructive, or fictitious occupation, not such a possession as is deemed under the publication of the Comptroller's notice to be in him, which was, as above shown, only for particular purposes; indeed no " occupation " is declared in the statute. Nor has there been an open and notorious use of the premises, so open, hostile and exclusive as to be productive of ouster of another occupant as is required to establish an adverse possession. (*Culver* v. *Rhodes*, 87 N. Y. 348; *Burbank* v. *Fay*, 65 id. 57; *Heller* v. *Cohen*, 154 id. 299; *Wiechers* v. *McCormick*, 122 App. Div. 860.) An owner in actual or constructive possession of land may not be required to take notice of the running of the Statute of Limitations. (*People ex rel. McGuinness* v. *Lewis*, 127 App. Div. 107.) The plaintiff and the defendant Bell have established a legal title to the premises and are presumed to have been in possession thereunder.

Neither of these defenses can be maintained.

The other affirmative defense is the Statute of Limitations, under sections 131 and 132 of the Tax Law (Gen. Laws, chap. 24; Laws of 1896, chap. 908). These sections have been held to be both curative acts and Statutes of Limitations. We need not discuss them as curative acts; as such they relieve from irregularities only and the difficulty here is not an irregularity, and by a curative act the Legislature cannot transfer title from one person to another. (*Wallace* v. *McEchron*, 176 N. Y. 424; *People* v. *Ladew*, 189 id. 355; *People* v. *Inman*, 197 id. 209.)

At the time of the advertised tax sales of 1877, 1881 and 1885 the Tax Law of the State, as now, provided a complete scheme for the levying of taxes and, if they were not paid, for their collection by public sale of the lands assessed; and, after such sale of the land, if not redeemed, for a conveyance by the Comptroller to the purchaser. The Comptroller has nothing to convey, and no authority under the Tax Law to convey any lands, except such as have been sold for taxes at public sale and are unredeemed. Every conveyance by the Comptroller mentioned in sections 131 and 132 of the Tax Law is such a conveyance and none other. Section 131 is prospective and announces the rule of evidence in respect to future deeds only and contains no provision for the cancellation of a sale or a tax deed. It is qualified by, and must be read with, section 132. (*People ex rel. McGuinness* v. *Lewis*, 127 App. Div. 107.) Section 132 contains this: " Every such conveyance heretofore executed by the Comptroller, * * * which have [has] for two years been recorded in the office of the clerk of the county in which the lands conveyed thereby are located, * * * shall be conclusive evidence that the sale and proceedings prior thereto, from and including the assessment of the lands, * * * were regular and were regularly given, published and served according to the provisions of all laws directing and requiring the same or in any manner relating thereto, but all such conveyances * * *, and the taxes and tax sales on which they are based, shall be subject to cancellation, by reason of the payment of such taxes, or by reason of the levying of such taxes by a town or ward having no legal right to assess the land on which they are laid, or by reason of any defect in the proceedings affecting the jurisdiction upon constitutional grounds, on direct application to the Comptroller, or in an action brought before a competent court therefor; provided, however, that such application shall be made, or such action brought, in the case of all sales held prior to the year eighteen hundred and ninety-five, within one year from the passage of this act." That act took effect on June 15, 1896, and said sections 131 and 132 are now a part of the present Tax Law (Consol. Laws, chap. 60 [Laws of 1909, chap. 62], §§ 131, 132). As above shown, the owner of the land cannot main-

tain a proceeding on application to the Comptroller for a cancellation of the conveyance. The latter part of this section is a Statute of Limitations and for the purposes of this proceeding we may accept it as effective, if the owner of the land has been given his day in court and a reasonable time in which to bring his action against the State. One year may be considered a reasonable time and he is given a right to maintain an action against the Comptroller representing the State in possession as above appears after the publication of the Comptroller's notice. But this right to maintain an action is limited to three specific grounds. Evidently the ground of complaint in this action does not come under the first or second ground stated in the statute; but it is claimed that it comes within the third, " by reason of any defect in the proceedings affecting the jurisdiction upon constitutional grounds." It is undisputed that the Comptroller had, under the tax proceedings, jurisdiction; and the right, to sell these lands at each sale advertised. The complaint is that he did not sell; not that he sold in an improper manner, but that he did not do that thing without which he had no authority to execute a deed. It is not a defect in the proceeding affecting the jurisdiction that is complained of, but that no sale was had.

This statute gives no right of action to the landowner by reason of the fact that the Comptroller failed to sell the land. Since the action against the State can only be prosecuted under the terms and conditions imposed by the statute and since this ground of complaint is not one of the grounds specified in the statute, the plaintiff and the defendant Bell, or their predecessors, have never had a right to their day in court, in which to assert and enforce such rights as they had in this lot. The statute, therefore, has not run against these parties. (*Wallace* v. *McEchron,* 176 N. Y. 424, 428, 429; *Bryan* v. *McGurk,* 200 id. 332.)

We are not inclined to hold that the Legislature can deprive an owner of his land by declaring that a void deed shall be conclusive evidence of its own validity, or of the title to those lands in the grantee in a void deed. When a deed is void, no record can increase its efficacy, nor do we think an act of the Legislature can. A Statute of Limitations will not

run in favor of this void deed. (*Marx* v. *Hanthorn*, 148 U. S. 172; *Peterson* v. *Martino*, 210 N. Y. 412, 420; citing *Wallace* v. *International Paper Co.*, 53 App. Div. 41; *Cromwell* v. *MacLean*, 123 N. Y. 491.)

The judgment appealed from should be affirmed, with costs.

Present — JOHN M. KELLOGG, P. J., WOODWARD, COCHRANE, H. T. KELLOGG and VAN KIRK, JJ.

Judgment unanimously affirmed, with costs.