MARY J. McCARTHY, Plaintiff, v. SARA G. MOORE and Another,
    Defendants.  (Action No. 1.  Tax Sale 1877, 1881, 1885.)
MARY J. McCARTHY, Plaintiff, v. ISAAC R. FISH and Others,
    Defendants.  (Action No. 2.  Tax Sale 1877.)

Supreme Court, Warren County, March 24, 1925.

Partition — action for partition of vacant forest lands, record title to
    which is in State by virtue of tax deeds — proceedings with respect to
    tax sale and acquisition of lands by State validated by failure of adverse
    claimants to seek cancellation thereof — Laws of 1896, chap. 908, § 132,
    barred any rights in claimants — failure of claimants to file claim to
    lands bars claims within provisions of Laws of 1920, chap. 854.

Plaintiff's actions for the partition of wild, vacant forest lands in the Adirondacks
    record title to which is in the State of New York by virtue of certain tax deeds,
    based on the claim that said tax deeds are void, should be dismissed, where it
    appears that the proceedings with respect to the various tax sales by which
    said lands were acquired by the State were validated by the failure of adverse
    claimants to seek the cancellation thereof under the provisions of chapter 854 of
    the Laws of 1920.  Moreover, section 132 of chapter 908 of the Laws of 1896
    cut off any rights, predicated upon any defects in proceedings theretofore had,
    and the failure of the claimants to file claims to said lands bars any right they
    may have had within the provisions of chapter 854 of the Laws of 1920.

ACTIONS for the partition of wild, vacant, forest lands, record
title to which is in the State by virtue of tax deeds.

*William J. Moore*, for the plaintiff.

*E. J. Lake, Deputy Attorney-General*, for the State of New York.

WHITMYER, J.:

The actions have been brought to partition certain parts of lot 18,
township 24, Totten & Crossfield's purchase, town of Chester,
Warren county, N. Y.  The patent, dated June 27, 1839, was for
420 acres, 210 acres in the northerly half, and the same number
in the southerly half, while the survey in evidence, made in May,
1924, shows 201.5 acres in the northerly half and 201.6 in the
southerly half.  Action No. 1 relates to the northerly half and the
complaint alleges that plaintiff is the owner of two-thirds and
defendant Moore of one-third thereof.  Action No. 2 relates to the
northerly 82.3 acres of the southerly half and the complaint alleges
that plaintiff is the owner of one-third, each one of the defendants
Fish of one-fourth and defendant Moore of one-sixth thereof.  The
lands are wild, vacant, forest lands.  The record title is in the
State by virtue of three tax deeds, the first given by the Comptroller
on April 30, 1881, pursuant to the 1877 tax sale for the 1868 taxes,
describing the land therein conveyed as being the northerly 300

acres; the second given October 31, 1884, pursuant to the 1881 tax sale for the 1871, 1874, 1875 and 1876 taxes, describing the land therein conveyed as the northerly 200 acres thereof, and the third given April 22, 1890, pursuant to the 1885 tax sale for the 1877 and 1878 taxes, also describing the land therein conveyed as the northerly 200 acres thereof.   The 82.3 acres involved in action No. 2 were included only in the 1881 deed, given pursuant to the 1877 sale, and are not affected by the 1881 and 1885 sales.   The actions are based on the claims that said deeds are void, the first because of jurisdictional defects and the others because the lands were withdrawn from the sales and arbitrarily struck down to the State without the receipt of any bids.   The State's answer is (1) the short Statute of Limitations under Laws of 1896, chapter 908, section 132, based upon said deeds and possession in the Comptroller, under his notice of possession, published for three weeks from December 14, 1894, pursuant to Laws of 1893, chapter 711, section 13, and (2) upon the failure of claimants to make or to file a claim to the lands under Laws of 1920, chapter 854, within six months from May 21, 1920, when that act became effective.   The 1881 and 1885 sales may be disposed of at the outset.   The 1881 sale was started on November 23, 1881, and the 1885 sale on December 29, 1885.   Sanger, the auctioneer at each, testified to the effect that the 200 acres involved were withdrawn from each.   Notations on the sales sheet for each so indicate.   Further, the State had the deed from the 1877 sale at that time, having received it on April 30, 1881, and section 3, chapter 402 of the Laws of 1881, effective May 27, 1881, and amending section 48, chapter 427 of the Laws of 1885, among other sections, prohibited the sales.   Thus, it is apparent that the 200 acres were withdrawn from each sale, so that the deed following from each was void.   (*Ostrander* v. *Bell*, 199 App. Div. 304, 309; *Saranac L. & T. Co.* v. *Roberts*, 195 N. Y. 303, 312; *People* v. *Inman*, 197 id. 200, 205.)   That leaves the 1877 sale for consideration.   The 1868 assessment roll shows lot 18, north part, 300 acres, assessed as non-resident, and lot 18, south part, 200 acres, assessed to Isaac Fish, a resident.   The patent was for 420 acres, 210 in the northerly half and 210 in the southerly half. The survey shows 403.1 acres, 201.5 acres in the northerly half and 201.6 in the southerly half.   In either case there was a double assessment as to a portion.   That was illegal.   (*Joslyn* v. *Rockwell*, 128 N. Y. 334, 340; *People ex rel. Boenig* v. *Hegeman*, 220 id. 118, 121.)   Then, the tax was not paid and the 300 acres were returned to the Comptroller as subject to the lien and were put up by him for sale, pursuant to chapter 427 of the Laws of 1855,

at the sale commencing October 9, 1877, ending October 18, 1877, and, under the then practice, were bid down to 100 acres in the northerly end for the taxes and charges against the 300 acres and, as thus bid down, were struck off to one Jesse C. Hansee. A certificate of sale accordingly was issued on October 18, 1877. Hansee did not pay. Thereupon and after the expiration of three months from the end of the sale, the Comptroller canceled it and changed the certificate so as to cover the 300 acres, pursuant to section 48 of chapter 427 of the Laws of 1855, as amended by chapter 152 of the Laws of 1878, and then transferred the certificate to the State. The tax had not been paid and the tax proceeding was still pending. And the presumptions are that he did what he did, after an attempt to issue a certificate to some other person, willing to pay the bid, and after April 20, 1878, when chapter 152 of the Laws of 1878 became effective. The burden of proving otherwise was on claimants and they did not offer such proof. Then and commencing in April, 1879, the Comptroller published a notice of unredeemed lands for six weeks. The notice was to the effect that 100 acres in the northerly end were unredeemed. Later and on April 30, 1881, he conveyed the 300 acres to the State. That was required. (*Meigs* v. *Roberts*, 162 N. Y. 371, 376.) The deed was recorded on July 1, 1882. Proof of service upon an occupant was not filed with it. That was not required. The lands were not occupied, within the meaning of the law, two years from the time to redeem, October 18, 1879. (Laws of 1855, chap. 427, § 68; Laws of 1893, chap. 711, § 14; Tax Law, § 134.) Nevertheless, the proceedings were defective and the defects were jurisdictional. But a Statute of Limitations will cut off any rights, based upon such defects, provided that a reasonable time to enforce such rights is given. (*Meigs* v. *Roberts*, *supra*, 378.) That reasonable time was given by section 132, chapter 908 of the Laws of 1896, following the publication by the Comptroller, for three weeks from December 14, 1894, of his notice of possession, pursuant to Laws of 1893, chapter 711, section 13. It expired one year from June 15, 1896, when the 1896 act became effective. And no action was brought before that to cancel the tax sale or to dispossess the Comptroller or the People. Thus, the deed, executed and delivered pursuant to the sale, became conclusive as to the regularity of the sale and all proceedings prior thereto.

That makes the consideration of Laws of 1920, chapter 854, effective May 21, 1920, unnecessary. But the parties have discussed its effect and have asked for its consideration. Accordingly, that will be given briefly. The act was passed to provide for a commission to investigate titles to lands claimed adversely to the State in counties containing portions of the Forest Preserve, and

to report its proceedings together with its recommendations in relation thereto to the Legislature. It constituted certain State officers as such commission, with all the powers conferred by the Legislative Law upon a committee of the Legislature, empowering the commission to visit the said counties and obtain facts relative to titles in dispute, hold hearings, compel the production of public records and documents on file in said counties, subpœna witnesses, require their attendance, administer oaths, examine them, and to invoke the power of any court of record to compel them to attend and testify and to produce books and papers. It provided that an adverse claimant of lands described upon the State land list, in the custody of the Comptroller, should, within six months after the act went into effect, file with the commission a statement describing the land claimed and setting forth his claim of title, and, if he failed, that he should be forever barred from maintaining an action against the people with relation thereto or from interposing his said claim of title as a defense to any action or proceeding brought by the people to recover possession thereof. It required the commission to subscribe the evidence, which might be taken, and to file it in the office of the Secretary of State, and it provided that the evidence, so taken, subscribed and filed, might be read in evidence by any party to an action or proceeding, involving the title to such real property, with the same force and effect as if taken in his behalf, pursuant to article 10, chapter 14, title 1 of the Code of Civil Procedure, and that the report made, as required, should be presumptive evidence of the facts therein stated in any action or proceeding pending or thereafter brought in the courts of this State, in which the title to said lands might be in issue. The act is not local, within the meaning of article III, section 16, of the State Constitution, and whether or not a State land list was at that time authorized by law, such a list had been kept and officially recognized for many years before and is referred to in the act. Moreover, the parties have stipulated that the lands in question were described and carried upon the State land list, in the custody of the State Comptroller, when the act went into effect. The purpose of the act was to provide a method of perpetuating evidence in cases of adverse claims to lands, claimed by the State, and to dispose of such claims within a reasonable time. Vested rights were not cut off or disturbed. If a claimant had no right, he lost nothing. If he had a right, he had six months to assert it. That was a reasonable time. (*Turner* v. *New York*, 168 U. S. 90.) It is a Statute of Limitations, and the claimants did not make or file claims within the time fixed, so that their claims, if any, are barred, if they were not barred before. Findings accordingly.