DAVID J. TYSEN and Another, Respondents, *v.* THE CITY OF NEW
YORK, Appellant.

Second Department, January 16, 1925.

Taxation — action to have canceled certain tax entries for years 1860,
1868, 1869 and 1872 as cloud on title — taxes were assessed against owner
as resident taxes — taxes were not reassessed following year against
land as required by Laws of 1855, chap. 427, in order to make them lien
on land — taxes were not lien and do not constitute cloud — fact that
title insurance company refused to insure against said taxes is not of
any weight.

A complaint in an action to have canceled certain tax entries for the years 1860,
1868, 1869 and 1872 as a cloud on title is dismissed, since it appears that the
taxes were assessed against the owner as resident taxes and were not, under
the laws that then existed, a lien upon real property, and that they were not
reassessed the following year as required by chapter 427 of the Laws of 1855
in the manner, provided for making them a lien upon the real property.
Inasmuch as the taxes are not a lien upon the real property in question, the
entries do not constitute a cloud upon the title.

The fact that a title insurance company refused to insure the title against the
taxes in question will not be given any weight by the Appellate Division.

APPEAL by the defendant, The City of New York, from a judgment
of the Supreme Court in favor of the plaintiffs, entered in the office
of the clerk of the county of Richmond on the 27th day of March,
1924, upon the decision of the court rendered after a trial at the
Richmond Special Term, which judgment directed the cancellation
of certain tax records.

*William H. King* [*George P. Nicholson, Corporation Counsel,* and
*Isaac Phillips* with him on the brief], for the appellant.

*Arthur O. Townsend* [*E. Crosby Kindleberger* with him on the
brief], for the respondents.

KAPPER, J.:

This action was brought to obtain the cancellation of public
records of certain tax entries, which the judgment appealed from
directed. The tax records in question were the entries for the
years 1860, 1868, 1869 and 1872, made by the tax officials of the
former town of Middletown, in the county of Richmond, and the
theory of the action is that such tax entries constitute a cloud
upon the title of the plaintiffs to certain real estate in said town
to the ownership of which they have succeeded by various mesne
conveyances.

The facts are undisputed. Briefly stated, the entries (with the
exception of one small immaterial item) show as the person assessed,
the *estate* of one Commodore DeKay. At the outset of the trial

plaintiffs' counsel stated that the property alleged to be affected by the tax entries was owned at the time " by the DeKay Estate," and " were imposed upon this property, according to the tax records, as *resident* taxes." The complaint alleged that " the said taxes so entered upon the regular tax and public records as aforesaid, and upon the record of the arrears of taxes and assessments of the City of New York, were not *re-assessed with a description of the property in the next year following any one of said assessments*, in the manner, at their respective dates, provided for assessing *non-resident* taxes  *  *  *  as required by chapter 427 of the Laws of 1855." This precise language was carried into the findings made by the Special Term.

The statute of 1855 above referred to, in so far as concerns the matter now involved, was re-enacted by section 41 of article 2 of title 3 of chapter 13 of part 1 of the Revised Statutes of 1859 (1 R. S. [5th ed.] 925, § 41), the latter being a general revision of the tax laws of the State. What said statutes meant by the phrases " resident " lands or taxes and " non-resident " lands or taxes has been elucidated in various cases, but in none more clearly than in *Hagner* v. *Hall* (10 App. Div. 581), where Mr. Justice CULLEN (p. 585) said: " Until the year 1850 the tax in the case of the lands of residents could never become a lien on the land. The sole method of enforcing it was from the personal property of the owner. If the tax of one year was unpaid, it was added to the tax of the next year and attempted to be collected with it out of personal property. Thus taxes in default became cumulative, but not charged on the land. Taxes in the case of lands of non-resident owners were charges on the land and created no personal liability against the owner. In 1850, and afterwards in 1855,* the system as to unpaid taxes of residents was changed. When the tax was in default, the next year it is to be levied and returned in the same manner as is the case with lands of non-resident owners." And in *People ex rel. McGuinness* v. *Lewis* (127 App. Div. 107), Mr. Justice MILLER, in discussing an alleged void tax sale (p. 117), said: " Resident lands were sold on an assessment against a non-resident. The lands were not assessed as non-resident lands, the assessment being laid against an individual, as the return states that the land was assessed to Alfred C. Meade. Such a defect is plainly a jurisdictional defect, as the Comptroller or the county treasurer, as the case may be, had no jurisdiction to sell the land for taxes unless the assessment was laid in form against the land and not an individual owner. Where taxes on resident real property are returned as unpaid, an assessment must first be laid against the

* See Laws of 1850, chap. 298, § 5; Laws of 1855, chap. 427, § 5.— [REP.

land as such, in the part of the assessment roll relating to non-resident lands, before a sale for such unpaid taxes can be made."

The conceded fact that "resident lands" were here assessed without any subsequent entry showing further official steps to charge the land with liability gives rise to the answer made by the appellant, the city, that equity was without power to entertain this action. With this contention we are obliged to agree, as the controversy must be resolved upon the basis of whether or not the tax entries constituted a *lien* upon the land. If they did, we should be required to determine the question of the validity of the tax entries, presented here by the respondents on the theory that as the tax was imposed against an *estate* it was illegal within the authority of *McKie* v. *Brown* (199 N. Y. 71, 74) and cases there cited. On the other hand, if the tax entries, irrespective of being assessed to an *estate* instead of to an *individual* owner or to a person in his *representative* capacity by naming such person together with his representative character as required by section 10 of article 2 of title 2 of chapter 13 of part 1 of the Revised Statutes (1 R. S. 391, § 10; 1 R. S. [5th ed. 1859] 909, § 10), did not constitute a lien upon the land, it is wholly immaterial in this action what the *form of the entry* was. The tax being purely a personal one, creating between the person assessed and the taxing authority the relation of debtor and creditor, the fact that the entries apparently assessed an estate instead of an individual as commanded by the statute, makes it a subject regarding which the plaintiffs here have no concern whatever. An attack upon the validity of the tax entry, if any, could be made by the debtor, but not by these plaintiffs, who are unaffected.

While we can add very little to the view already expressed, that these tax entries did not create and do not constitute a lien upon the land but, at best, created only a personal liability for debt against the person assessed, it may be useful to quote Mr. Justice GAYNOR, writing in *Greenfield* v. *Beaver* (30 Misc. 366), viz.: "The owner purported to be assessed for this land each year on the resident list. The tax levied pursuant thereto was not and could not be against the land, but only against the owner. Each year's tax if not collected of the owner could be assessed the next year against the land itself after the manner of assessing non-resident lands. * * * *In that way only could a lien be acquired on the land for the tax.* That has not been done in this case, and the time when it could have been done has passed. Hence these taxes are not liens against the land." (Italics mine.) In other words, "There cannot be a complete tax laid upon real estate until it is so perfected as to become a lien." (*Buckhout* v.

*City of New York,* 176 N. Y. 363, 369.) (See, also, *Rose* v. *Northrup,* 41 Misc. 238, opinion of Mr. Justice KRUSE.)

It is suggested by the respondents that we indulge in the presumption, because of lapse of time, that these taxes have been paid. This we cannot do in this action. As already indicated, if the tax entries were not a lien on the land they could not standing alone constitute a cloud on the title, and this action having been brought to remove such alleged cloud the tax entries cannot be destroyed by it. But even were the contention involved in this suit the authorities are inimical to the proposition. In a proceeding to vacate an assessment based upon the ground that a prior assessment had been paid, where there was no proof before the court that such prior assessment had, in fact, been paid, it was said (*Matter of Willett,* 70 N. Y. 490, 491): "The petitioner relies entirely upon the presumption of payment from the lapse of time. This will not do. In this proceeding taken by him, seeking affirmative relief, depending upon the fact of payment, he cannot rely upon the presumption, but must show actual payment by competent proof."

See, also, *House* v. *Carr* (185 N. Y. 453, 456), where it was said to be settled law that "equity will not set aside as a cloud upon title a lien outlawed by the Statute of Limitations." Such being the law with regard to an actual lien upon real estate, it certainly follows that the presumption cannot prevail where the tax never was a lien, and where it is urged in an action brought to remove a tax entry as a cloud upon the title of owners who were never assessed and were, therefore, never the debtors.

The learned justice at Special Term (122 Misc. 627) did not reject the view that the tax entries do not constitute a lien upon the land, but seems to have predicated his judgment upon the ground that "a title company refuses to insure the title unless these taxes are paid or canceled," the opinion of the learned justice further saying: "The defendant urges that the taxes in question are not a cloud on the title, because the taxes are not a lien against the property. But the very attitude of the title company would show that it is certainly regarded by them as such a cloud." This view may not obtain. The sole witness on the trial, an examining counsel for one of the title companies, did indicate that his company would "not insure against these old taxes," illustrating their position by instancing a tax upon other property where the assessment, however, was concededly a *lien,* a quite different example from the case at bar. But if the attitude of his company was taken because it preferred, quoting the witness' words, to "play safe," that cannot be allowed to weigh with the judgment of the court; nor may we

Second Department, January, 1925.     [Vol. 212

mould the principles of equity to conform to the unfounded objections of the title examiner. " The court does not entertain such an action to remove a doubt which might be created in the minds of persons dealing with the title, provided the means of forming a correct legal judgment are patent on the face of the instrument or proceeding by which the existence or non-existence of the right in question must be determined." (*Mellen* v. *Mellen*, 139 N. Y. 210, 219.)

We are also asked to consider an alleged threat of the comptroller of the city to enforce collection of the taxes against the plaintiffs' property. We find no evidence of it. And in the light of the city's contention made upon the trial and on this appeal that the taxes never were and are not a lien upon the lands of the plaintiffs, and with which view we are in accord, plaintiffs have no cause for apprehension on that score.

The judgment should be reversed upon the law and the facts, and the complaint dismissed, without costs, and the sixth finding of fact and the conclusions of law made by the Special Term should be reversed, and the findings and conclusions of law requested by the defendant should be found.

KELLY, P. J., JAYCOX, KELBY and YOUNG, JJ., concur.

Judgment reversed upon the law and the facts, and complaint unanimously dismissed, without costs; the sixth finding of fact and the conclusions of law made by the Special Term are reversed, and the findings and conclusions of law requested by defendant are found. Settle order on notice.