4 N.Y.2d 378 (1958)
Kiamesha Development Corporation, Appellant, et al., Plaintiff,
v.
Guild Properties, Inc., Respondent, et al., Defendants.
Court of Appeals of the State of New York.
Argued January 15, 1958.
Decided May 15, 1958.
F. Walter Bliss, Lawrence E. Lagarenne and Myron J. Wiess for appellant.
George H. Rosen for respondent.
Chief Judge CONWAY and Judges VAN VOORHIS and BURKE concur with Judge FROESSEL; Judge DESMOND dissents and votes to affirm the judgment in an opinion in which Judges DYE and FULD concur.
*382 FROESSEL, J.
The questions presented for review on this appeal deal solely with the first cause of action set forth in the complaint. It is there alleged that plaintiff, Kiamesha *383 Development Corp., obtained title to the premises in question by a deed from plaintiff Slud recorded July 23, 1947, and that Slud purchased the premises from defendant H. B. G. Holding Corporation by a deed recorded June 19, 1947. The complaint further alleged that the premises were sold on July 26, 1944, for unpaid 1942 taxes; that a deed to the premises had been obtained by defendant Guild Properties, Inc., on September 4, 1947, and recorded on September 9, 1947 (after both plaintiffs had recorded their deeds). Plaintiffs also alleged that the premises were improperly described in the tax deed, the notice of sale and the assessment roll, and that these and other errors invalidated the deed, tax sale and assessment. They sought judgment to declare the deed void, to quiet Kiamesha's title, and for related relief.
The trial court upheld plaintiff Kiamesha's claims on the first cause of action and awarded the requested relief.[*] The Appellate Division, however, reversed that determination and ruled that since this action was commenced more than two years after the recording of the tax deed to Guild Properties, Inc., it was barred by sections 131 and 132 of the Tax Law.
Section 131 of the Tax Law provides in pertinent part that a conveyance "to the owner" of a certificate of sale of land sold for taxes and not redeemed "shall be presumptive evidence that the sale and all proceedings prior thereto, from and including the assessment of lands sold, and that all notices required by law to be given previous to the expiration of the time allowed by law for the redemption thereof, were regular and in accordance with all the provisions of law relating thereto. After two years from the date of the record of such conveyance such presumption shall be conclusive."
Section 132 of the Tax Law provides: "Every such conveyance heretofore executed by the * * * county treasurer * * * which have for two years been recorded * * * shall be conclusive evidence that the sale and proceedings prior thereto, from and including the assessment of the lands, and all notices required by law to be given previous to the expiration of *384 the time allowed for redemption, were regular and were regularly given, published and served * * * but all such conveyances and certificates, and the taxes and tax sales on which they are based, shall be subject to cancellation, by reason of the payment of such taxes, or by reason of the levying of such taxes by a town or ward having no legal right to assess the land on which they are laid, or by reason of any defect in the proceedings affecting the jurisdiction upon constitutional grounds, on direct application to the department, or in an action brought before a competent court therefor; provided, however, that * * * such application shall be made, or such action brought, within five years from the expiration of the period allowed by law for the redemption of lands sold at the particular sale sought to be canceled."
In deciding that the two-year provisions of these statutes barred the instant action though it was brought less than five years after the expiration of the redemption period, the Appellate Division stated that the two-year provisions applied so as to "bar actions to cancel deeds stemming from jurisdictional defects as well as from mere irregularities", and it concluded therefrom that even if the defects shown here were "jurisdictional" the action was barred. It relied primarily upon our decision in Werking v. Amity Estates (2 N Y 2d 43, cert. denied 353 U. S. 933) in reaching this result, but that decision is not controlling here.
In the Werking case (supra) we found that noncompliance with section 69 of the Tax Law, relating to posting of notices, was such a defect as would invalidate a subsequent tax sale. The Appellate Division in that case had erroneously ruled that despite the defect, as the time for redemption under section 137 of the Tax Law had expired, the title of the tax purchaser was absolute, and the regularity of the proceedings conclusively presumed. We indicated that section 137 had no application there, as it only related to cases where "the proceedings for the assessment and collection of the tax and for advertisement and sale of the premises were conducted substantially in accordance with the provisions of the Tax Law" (2 N Y 2d 51); and we concluded that the action was timely since it was brought within five months of the recording of the deed.
*385 Our statement in that opinion that the action was not "barred by the two-year limitation prescribed by sections 131 and 132 of the Tax Law, which bar actions to cancel deeds stemming from jurisdictional defects as well as from mere irregularities" appears to have been misunderstood. We merely indicated thereby that the action was brought within the two-year period prescribed by sections 131 and 132, and that those sections  not the two-year limitation  "bar" the actions thereafter described. We did not state that the two-year period applied to all actions to cancel tax deeds, whatever defects were claimed, for such a holding would nullify the latter portion of section 132 of the Tax Law providing that in three enumerated cases actions to cancel tax deeds may be brought within five years of the last day for redemption of the property; and would overrule the numerous cases in which we have applied or referred to the five-year provision (e.g., People ex rel. Boenig v. Hegeman, 220 N.Y. 118; Bryan v. McGurk, 200 N.Y. 332; Manchik v. Pinelawn Cemetery, 291 N.Y. 816; Hunt v. Dekin, 187 Misc. 649, 654, affd. 273 App. Div. 800, affd. 298 N.Y. 575; Mongaup Val. Co. v. Orange Rod & Gun Club, 253 App. Div. 465, affd. 280 N.Y. 582; Lindlots Realty Corp. v. County of Suffolk, 278 N.Y. 45, 54; Clark v. Kirkland, 64 Misc. 585, 590, affd. 133 App. Div. 826, affd. 202 N.Y. 573; Adirondack League Club v. Keyes, 122 App. Div. 178 [affd. after trial 140 App. Div. 882, affd. 205 N.Y. 604]; People v. Patenaude, 286 App. Div. 140, 143; Doud v. Huntington Hebrew Cong., 178 App. Div. 748; People ex rel. McGuinness v. Lewis, 127 App. Div. 107; 9 Syracuse L. Rev. 69, 79).
Our decisions with respect to sections 131 and 132 may be grouped in three categories: (1) there are certain formal irregularities not so serious as to warrant the setting aside of a tax sale, whenever raised (Blum v. Nassau Purch. & Bldg. Corp, 256 N.Y. 232; McCoun v. Pierpont, 232 N.Y. 66; Saranac Land & Timber Co. v. Roberts, 208 N.Y. 288, 310-311); (2) there are certain defects in the proceedings from the assessment to the sale and in connection with notices for redemption which will invalidate them if raised within two years of the recording of the deed (Werking v. Amity Estates, 2 N Y 2d 43, supra; Moody v. Seabro Corp., 303 N.Y. 858; People ex rel. Boenig v. Hegeman, 220 N.Y. 118, supra); *386 and (3) there are certain defects which, under the provisions of the latter portion of section 132, may be raised for five years after the last day for redemption (Hunt v. Dekin, 298 N.Y. 575, supra; Clark v. Kirkland, 202 N.Y. 573, supra; Adirondack League Club v. Keyes, 122 App. Div. 178, supra).
Thus the question presented is whether the defects urged by plaintiffs are all within the first and second categories, as the Appellate Division has in effect ruled, or whether any are without those categories and hence not barred by the two-year provisions of sections 131 and 132. In our opinion, the two-year limitation does not bar the contentions (a) that the description of the property on the 1942 tax assessment roll, the notice of sale, the tax sale book, and the published notice to redeem was so defective that it could not reasonably be located in the ordinary course of examination of the records; and (b) that the tax certificate was wholly void because it was issued to a corporation not in existence at the time, and not the purchaser at the tax sale, and that consequently the tax deed issued thereon was void.
As to the first point, the proof showed that the property in question appeared on the tax assessment roll for 1942 with the following description:
 "Name of Owner Last Known or Reputed Owner 
 Kiamesha Inn, Inc.
 Mailing Address  Rd 89
 Number of School District  11
 Great Lot Number  1
 Division Number  27
 Sub Div Lot Number  14
 Name of Abutting Property Owners on Each of Four
 Sides Respectively 
 North  Hyman Klein. South  Fraser Rd.
 East  John Byrne-ano. West  Greenberg-Bailey-Kamenstein"
The facts as established in the courts below are that Kiamesha Inn Inc. was not the owner of that property in 1942  indeed there is no evidence that there ever was any such corporation, although the property previously had been the site of the Kiamesha *387 Inn garage. It was also shown that the subdivision lot number given was erroneous, the property being situated in lot number 15 not 14, and that the western boundary was erroneously described since the sole contiguous property on that border was owned by one Bailey.
The taxes for 1942 were not paid by the then owner, defendant H. B. G. Holding Corporation and, at a tax sale held on July 26, 1944, the property was sold for $37.05 to one David Baum. On August 23, 1944 a certificate was issued to Guild Properties, Inc., though no assignment to it from Baum was shown and there was then no such corporation. On September 4, 1947 a tax deed was issued to it, which deed was recorded September 9, 1947.
Defendant Guild Properties, Inc., argues that plaintiffs should have been able to locate the 1942 unpaid taxes on the assessment rolls inasmuch as the property had been described in the same manner since at least 1929. There was conflicting testimony from both sides as to whether or not the property could be located from the description in the assessment roll. We do not think that because one who had private information was able to find the property despite its erroneous description, plaintiff should be chargeable therewith. Plaintiff was not the tax delinquent, and knew nothing about the unpaid 1942 tax.
We are in accord with the determination of Trial Term that when all the errors are taken together they show that the property was so erroneously described that it could not reasonably be identified as the property described in plaintiff's deed. To deprive plaintiff of its property by virtue of proceedings in which the property was so inadequately described would violate due process of law (Helterline v. People, 295 N.Y. 245, 251; Cooley on Taxation [2d ed.], p. 40).
In plaintiff's second point it contends that the deed issued to Guild Properties, Inc., was wholly void because the tax certificate, the possession of which is a prerequisite to the issuance of a tax deed (Tax Law, § 131), was issued to Guild Properties, Inc., prior to its filing a certificate of incorporation with the Department of State, and without any assignment from the purchaser at the tax sale.
At the trial it was shown that the tax sale took place July 26, 1944, that David Baum was the purchaser, and, though the *388 record shows no assignment from him, the tax certificate was issued directly to Guild Properties, Inc., by the County Treasurer on August 23, 1944. When plaintiffs offered in evidence the certificate of incorporation of Guild Properties, Inc., dated August 25, 1944, containing two acknowledgments, one dated August 25, 1944, and the other August 30, 1944, which certificate was filed with the Department of State on September 5, 1944, defendant stated that "The Guild Properties was a de facto corporation and actually functioning".
The evidence in this record lends no support whatsoever to the mere claim that Guild Properties, Inc., was a de facto corporation on August 23, 1944, the date on which the tax certificate was issued to it. Without any exercise of corporate functions, without any colorable attempt to comply with the statutes governing incorporation before the issuance of the tax certificate, without any certificate of incorporation having been even prepared or acknowledged, it cannot be said that Guild Properties, Inc., was a de facto corporation on that date (Matter of Brooks Clothing of Cal. v. Flynn, 232 App. Div. 346; Matter of Munter v. Ideal Peerless Laundry, 229 App. Div. 56; Stevens v. Episcopal Church History Co., 140 App. Div. 570; Perinne v. Levin, 68 Misc. 327; De Witt v. Hastings, 8 Jones & Sp. 463, affd. 69 N.Y. 518; 8 Fletcher's Cyclopedia Corporations, §§ 3761, 3777; see, also, Buffalo & Allegheny R. R. Co. v. Cary, 26 N.Y. 75, 77; Methodist Episcopal Union Church v. Pickett, 19 N.Y. 482).
Indeed our New York statute (General Corporation Law, § 8) expressly provides:
"No corporation shall exercise any corporate powers or privileges until such taxes and fees have been paid [they were paid Sept. 5, 1944]. Immediately upon the filing of a certificate of incorporation in the department of state the existence of the corporation created thereby shall be deemed to begin" (emphasis supplied).
The tax certificate was thus made to a nonexistent entity incapable of taking thereunder, and accordingly could transfer no rights whatsoever  it was void (David v. Williamsburgh City Fire Ins. Co., 83 N.Y. 265; Matter of Munter v. Ideal Peerless Laundry, supra; Midland Trade Corp. v. Hechtkopf, 10 Misc 2d 771 [App. Term]; see, also, Matter of New York Cable Co. v. Mayor of City of New York, 104 N.Y. 1, 21, *389 and cases above cited; cf. Matter of Planz [Sees], 282 App. Div. 552). Here we are dealing with neither a corporation de jure nor one de facto, but with a purported entity which "cannot take title to real or to personal property, * * * acquire rights by contract or otherwise, incur debts or other liabilities either in contract or tort, sue or be sued" (18 C. J. S., Corporations, § 88; see cases cited in 14 C. J., p. 200; 8 Fletcher's Cyclopedia Corporations, § 3737, pp. 10-11).
A deed founded on such a tax sale certificate has no greater validity, for if Guild Properties, Inc., acquired no rights under the certificate, it was not the owner thereof within the meaning of section 131, could not apply for nor receive a deed, and under said section the certificate is now "void, and no claim can be maintained under the purchase" (emphasis supplied). There being no valid deed of record, the limitations prescribed in sections 131 and 132 have no application as to the prior proceedings.
Plaintiff has been in undisturbed actual possession of the property in question since 1947. In addition to its original investment of $13,000 for the land, it has made extensive improvements said to have cost in excess of $125,000. Its ownership of the property is now contested by virtue of jurisdictionally defective tax sale proceedings by a corporation which obtained a tax deed for $41.84 (including fees), though said corporation was not the purchaser at the tax sale, had no assignment from the purchaser, and was not in existence on the date of the issuance of the tax sale certificate to it.
We have often said that the nature of tax sales is such that the owner's title should not be divested unless the statutory requirements are "strictly observed" (Helterline v. People, 295 N.Y. 245, 251, supra; Werking v. Amity Estates, 2 N Y 2d 43, 49, supra; Whitney v. Thomas, 23 N.Y. 281, 286). Under the facts of this case, defendant cannot enlist the court's aid in exacting from plaintiff the heavy penalty of surrendering this valuable property, and at the same time ask that the deficiencies in its claim to title be disregarded.
The judgment appealed from should be reversed, the judgment of Trial Term reinstated, and so much of this appeal as is taken from the order of the Appellate Division dismissed, with costs.
*390 DESMOND, J. (dissenting).
I vote for affirmance.
Alleged defects or illegalities in a tax description cannot invalidate an assessment or a tax sale unless "a diligent taxpayer, anxious, in good faith, to identify his land, could be misled" by the description (McCoun v. Pierpont, 232 N.Y. 66, 69-70; Tax Law, § 55-a). Here the name of the owner was not correctly stated but the owner's name is no part of the description (Tax Law, § 55-a, supra). Also, the name given ("Kiamesha Inn") actually helped locate the property since it was the name by which the property had been known for many years and which had appeared as the owner's name on the tax records for many years. As to the tax description showing the lands on the west boundary of the parcel to be those of "Greenberg, Kamenstein and Bailey", the reference to these names was about as informative an indication of the location of this parcel as could be given. The subdivision lot was incorrectly given as "14" but this was hardly misleading in view of all the other data furnished and in view of the fact that these subdivisions were not small residential lots but large areas of land. Thus we had a description in which there were correctly stated the north, east and south boundaries, wherein the west boundary was stated in a peculiar but not misleading manner and wherein the purported owner's name actually stated the popular designation of the property. The only real error was as to the number of the subdivision. Much more important than all this are the undisputed facts that this property had carried the identical tax description for many years, that the taxes were paid on that description for many years before and after the tax year in question, and that a tax searcher employed by plaintiff had no difficulty in locating the parcel although for some reason he did not discover that the 1942 tax remained unpaid.
The fact that the tax deed grantee Guild Properties, Inc., was not fully incorporated until after its purchase of the tax sale certificate is the merest irregularity. The incorporation procedures were completed long before the tax deed passed.
Thus, I do not reach any question of Statute of Limitations because I think plaintiff failed to prove any substantial defects in the assessment. If we are to reach that limitation question, I do not see how we can avoid the plain holding of Werking v. Amity Estates (2 N Y 2d 43, 50, 51, cert. denied 353 U. S. 933) *391 decided less than two years ago. In holding the two-year limitation applicable the Appellate Division in the present case followed what it correctly called (4 A D 2d 334, 336) the "clear and unequivocal" language of Werking (supra). The language referred to was the statement in Werking (supra, p. 51) that the two-year limitation "bars actions to cancel deeds stemming from jurisdictional defects as well as from mere irregularities [citing cases]".
The judgment should be affirmed, with costs.
Upon appeal from judgment: Judgment of Appellate Division reversed and that of Trial Term reinstated, with costs in this court and in the Appellate Division.
Upon appeal from order: Appeal dismissed.
NOTES
[*] On a preliminary motion, Slud was stricken as a party plaintiff as to the first two causes of action, and certain matter (not material here) was eliminated from the complaint. Hereinafter Kiamesha Development Corp. is sometimes referred to as plaintiff and Guild Properties, Inc., as defendant.