OPINION OF THE COURT
David O. Boehm, J.
This is a motion for summary judgment requiring the specific performance of a contract for the sale of real property brought by plaintiff, Paul N. Taccone, as administrator of the estate of Sirie P. Taccone, deceased, against defendant, William Di Renzi.
On June 25, 1976 plaintiff and defendant entered into a contract for the sale of real property, consisting of lots numbered 640 to 659, inclusive, plus three mobile homes located on the property, all for $15,000. The property, known as the Crystal Beach Trailer Park, is located on East Lake Road in the Town of Gorham in Ontario County, New York. It has been used as a trailer park for approximately 10 years.
The agreement requires that the "Seller shall tender to Buyer a Warranty Deed with lien covenant conveying good, marketable title in fee simple to said premises.” The contract also provides that if the buyer makes valid written objection to the marketability of title, the contract will nevertheless remain in full force and effect if the seller is able to cure the objection prior to the closing date or "if either party secures a commitment for title insurance * * * to insure the marketability of title against the objections raised”.
On October 20, 1976, the Monroe Abstract & Title Corporation agreed to issue title insurance for all lots except lots 640 through 645 and 655. As to these lots, Monroe Abstract stated that it "affirmatively insured that its insured hereunder will have full use, possession and quiet enjoyment of the premises to the exclusion of all not claiming under said insured.” By *789 letter dated February 1, 1977, plaintiff, by his counsel, sent a letter to defendant stating that time was of the essence and that he would be present in the Monroe County Clerk’s office on Friday, February 11, 1977 at 2:00 p.m. "ready, willing and able to complete said transfer of said properties.”
By letter dated February 4, 1977, counsel for defendant replied that his client was also ready, willing and able to perform his part of the bargain upon delivery of good and marketable title. He stated, however, that based upon his examination of the abstract of title and the Monroe Abstract title report, it was his opinion that plaintiff was unable to convey marketable title. On February 11, 1977, counsel for plaintiff was present in the Monroe County Clerk’s office to close the deal and transfer title, but neither defendant nor his counsel appeared.
Plaintiff then commenced this action to declare title to the lots "good and marketable” and for specific performance. Defendant interposed an answer consisting of a general denial. Plaintiff has now brought this motion for summary judgment. 0
It is undisputed that decedent, Taccone, purchased the lots in question more than 15 years prior to the execution of the contract and that no claim of other title has ever been asserted against the land. Included in plaintiff’s papers is an affidavit of Carmella Taccone, widow of the decedent, dated December 1, 1976, prepared for purposes of the closing. In it, Mrs. Taccone states that "her deceased husband was the owner in possession and occupation of the premises described * * * for 20 years last past”, that "the use of said premises by the deceased was open, notorious and adverse”, and that "said ownership, possession, occupation and use of said premises by deceased was never challenged or questioned, nor has any claim of title or ownership thereof ever been filed or instituted against deceased by anyone or any lawsuit commenced whatsoever.”
Although the answer contains only a general denial, the defendant in opposing this motion for summary judgment, raises a number of objections to the title. Most of the objections relate to minor defects which have been cured or are easily and ministerially curable. However, the defendant raises a serious objection as to the tax sales in the chain of title of 12 of the lots, asserting that they were jurisdictionally defective because notices of the tax sales were published in *790 only one newspaper and because notice of sale was not given to the record owner, Finger Lakes Land Co., Inc. Further, he points out that there are also gaps in the chain of title of 7 of these same 12 lots, rendering title to them wholly unmarketable.
Finally, the defendant makes a general observation that "constitutional questions are presented by the tax sales.” For purposes of later discussion, it is significant to note here that defendant does not controvert decedent Taccone’s continuous, open and notorious possession of the land from the date he first purchased and began occupying the property.
However, because Monroe Abstract agreed to insure the marketability of title of five lots which do not have gaps in their chain of title, the defendant is precluded from raising objections as to their marketability. The availability of title insurance is all that is required by the contract between plaintiff and defendant (cf. New York Investors v Manhattan Beach Bathing Parks Corp., 229 App Div 593, 599, affd 256 NY 162).
As to the other seven lots, the abstracts of title reveal that they were owned in 1929 by the Finger Lakes Land Company and were sold at tax sales by Ontario County between 1940 and 1944. While the notices of tax sales set forth the names of the parties listed in the tax account for each lot, neither the grantor nor grantee indices has any record of deeds being conveyed by the Finger Lakes Land Company to any of the parties so listed.
Ontario County subsequently sold these seven lots to certain individuals by quit claim deeds and, between 1954 and 1959, the decedent acquired title to these lots from different grantors.
The issue here presented involves the effect of the tax sale transfers and the gaps in the chain of title on the marketability of the seven lots in question.
Marketable title has traditionally been defined as "good title, one that is free and clear from encumbrances or from material defects in the title * * * a title that is free from all reasonable doubt but not necessarily from all doubt” (3 Warren’s Weed, New York Real Property, Marketability of Title, § 2.01, p 7; see, also, Chesebro v Moers, 233 NY 75, 81-82; 62 NY Jur, Vendor and Purchaser, § 48). While a tax title does not have the same presumption of validity as other transfers of title, such title may nevertheless be marketable (see, 3 *791 Warren’s Weed, New York Real Property, Marketable Title, § 2.14; 62 NY Jur, Vendor and Purchaser, § 54). A subsequent conveyance by the county is presumptive evidence that the sale and all prior proceedings relating thereto "were regular and in accordance with all the provisions of law” (Real Property Tax Law, § 1020, subd 3; Handy v D’Onofrio Bros. Constr. Corp., 59 AD2d 254, 255; Harten v Kline, 71 Misc 2d 187).
Of course, marketability depends upon strict compliance with the tax foreclosure statutes (see Kiamesha Dev. Corp. v Guild Props., 4 NY2d 378, 389; Clason v Baldwin, 152 NY 204, 210; Wiesniewski v Basinait, 59 AD2d 1028), including publication of the notice of sale in two newspapers "at least once in each week for six weeks in two newspapers.” (Real Property Tax Law, § 1002, subd 1; [formerly Tax Law, § 151].)
While the abstracts of title show that the various notices of sale for the seven lots were published once each week for six successive weeks, the abstracts also disclose by the affidavits filed in the Ontario County Clerk’s office that the respective notices of sale were published in only one newspaper.
Although not raised by either party, an examination of the abstracts of title also reveals that the various notices of the expiration of the periods of redemption were only published in one newspaper, contrary to subdivision 1 of section 1014 of the Real Property Tax Law (formerly Tax Law, § 130), which requires notice of the expiration period of redemption to be published in two newspapers at least once a week for six successive weeks.
Noncompliance with the notice of sale provisions has been held to be a jurisdictional defect, not a mere irregularity (see Clason v Baldwin, 152 NY 204, supra; 5A Warren’s Weed, New York Real Property, Tax Sales, § 3.06). Failure to give proper notice of redemption is also considered a jurisdictional defect (see Matter of Evans v Colvin, 54 Misc 2d 927, 931).
However, as the plaintiff points out, the five-year Statute of Limitations established in subdivision 3 of section 1020 of the Real Property Tax Law (former Tax Law, § 132) renders any jurisdictional defects or claims immaterial. A reading of this section indicates that upon the expiration of the five-year period of limitations, the Legislature created a conclusive presumption of regularity of the tax sale and the prior proceedings relating thereto (see Kiamesha Dev. Corp. v Guild Props., 4 NY2d 378, 386, supra; Mabie v Fuller, 255 NY 194).
Defendant contends this conclusive presumption does not *792 apply because the record owner of title, Finger Lakes Land Co., Inc., was not given notice of the sale and, consequently, the five-year Statute of Limitations would not run as to it, citing Peterson v Martino (210 NY 412).
However, defendant’s reliance on this point is misplaced. What the Court of Appeals held in the Peterson case was that the Statute of Limitations did not run against an owner where the description of the land in the notice was so vague and indefinite as to make it impossible for the owner to have notice of the sale (see, also, Manchik v Pinelawn Cemetery, 263 App Div 961, mot for rearg den 264 App Div 730, affd 291 NY 861; County of Montgomery v Gasner, 68 Misc 2d 300).
Further, all that the statute required is that "[s]uch list shall contain the name of the owner or occupant of each parcel of real property to be sold; as the same appears upon the assessment-roll” (former Tax Law, § 151, emphasis supplied, now Real Property Tax Law, § 1002, subd 2). Because all the tax sales in question contain the names which appeared on the assessment roll at that time, this notice of sale requirement has been fully met. There is no requirement that the county search the grantor and grantee indices to discover if the name of the record owner is different from the name listed on the assessment roll. Even the recent 1976 amendment to subdivision 4 of section 1002. of the Real Property Tax Law, which now compels additional notice by first class mail, provides that it need only be sent to the person "shown on the assessment roll”.
The question which the defendant raises tangentially as to the constitutionality of tax sales need not detain us. He is not an aggrieved party and thus lacks standing to question the constitutionality of the notice provisions (see Pearson v Dodd, 429 US 396; Warth v Seldin, 422 US 490; see, also, Boryszewski v Brydges, 37 NY2d 361). Defendant may only question a constitutional infirmity as it relates to the question of marketability of the title he is being asked to accept. However, the notice provisions of sections 1002 and 1014 of the Real Property Tax Law have already been held constitutional by the Court of Appeals in Botens v Aronauer (32 NY2d 243, 249, app dsmd 414 US 1059).
The defendant raises the more forceful argument that although the expiration of the period of limitations may operate as a conclusive presumption of the regularity of the proceedings, this does not of itself render a title marketable. *793 Indeed, it has been held that the Statute of Limitations only creates a bar to an action when the new record owner is in possession (Saranac Land & Timber Co. v Roberts, 208 NY 288, 311; see, also, Getman, Title to Real Property, p 487).
Furthermore, the courts have distinguished between voidable and void tax deeds. As the Court of Appeals has pointed out: "There is a vast difference between a tax deed voidable for irregularities in the proceedings and a tax deed void because the proceedings were a nullity due to prior payment of the tax. A Statute of Limitations ordinarily does not start to run until the right sought to be barred has accrued” (Cameron Estates v Deering, 308 NY 24, 30; emphasis in original).
Thus, although title may be good, the five-year Statute of Limitations will not by itself render a title marketable without more, such as a curative judicial declaration of marketability, as in an action such as this one for specific performance (see Miller v Mihm 256 App Div 897; Ministers, Elders & Deacons of Reformed Prot. Dutch Church v Madison Ave. Bldg. Co., 214 NY 268; Pedowitz, Tax Titles — Would You Insure One? 49 NYSBJ, 550, 592).
Although the above principles would apply to the five lots which the title company agreed to insure, they obviously would not correct the serious flaws resulting from the gaps in the title of the seven lots. The curative provisions of subdivision 3 of section 1020 of the Real Property Tax Law would not apply as to such defects and, consequently, title to these seven lots would not be marketable.
However, the passage of a sufficient period of time may operate to transform even a defective title into a good and marketable one. All that is required is for title to ripen by adverse possession. For this to occur the possession must be actual, open, notorious, exclusive, continuous and under a claim of right (1 Warren’s Weed, New York Real Property, Adverse Possession, § 1; see, also, Clason v Baldwin, 152 NY 204, 209, supra) for a period of 10 years (CPLR 212, subd [a]; formerly 15 years as to decedent’s property, CPLR 218, subd
M).
It is undisputed that decedent was in continuous possession of the property for over 15 years. The possession was open and notorious and the land was held under claim of right. Conceding the validity of defendant’s argument that plaintiff has the burden of proving the marketability of title (see 1 Warren’s *794 Weed, New York Real Property, Adverse Possession, §§ 11.05, 17.01, 18.01-18.09) the plaintiff’s sworn and unrebutted statements in his pleadings and motion papers are sufficient to meet that burden (see Lincoln First Bank of Rochester v Siegel, 60 AD2d 270). Accordingly, this court finds plaintiff’s title to be good and marketable.
Policy and common sense also dictate this conclusion. Plaintiff’s decedent has held recorded title to the land for a substantial period of time and no one has asserted any claims against it (see 2 NY Jur, Adverse Possession, § 34). All seven lots were transferred by tax deed by Ontario County more than 30 years ago, thereby rendering any possible claim stale (1 Warren’s Weed, New York Real Property, Adverse Possession, § 6.01). The decedent, no doubt, paid good and valuable consideration for his land, the boundaries of which are carefully described and defined (ibid.). No individual, such as a prior owner contesting title, is being divested of or is forfeiting any right (see Mabie v Fuller, 255 NY 194, supra; 1 Warren’s Weed, New York Real Property, Adverse Possession, § 18.02). Indeed, the holding here will have just the opposite effect and prevent a future forfeiture by quieting title (see 48 NY Jur, Quieting Title, § 69). Whenever possible, in situations such as this, title should be held good and marketable so that land transactions may be freely transferable in the open real estate market.
Accordingly, plaintiff’s motion for summary judgment and for specific performance is granted.