**In the Matter of the SERVO SYSTEMS, INC., Debtors.**

**Bankruptcy No. 81 B 10005.**

United States Bankruptcy Court, S. D. New York.

June 16, 1981.

Thomas J. Abinanti, White Plains, N. Y., for debtor.

Glass, Howard & Crane, New York City by Robert L. Howard, New York City, of counsel, for Larchmont Federal Savings & Loan.

## DECISION ON MOTION TO DISMISS THIS REORGANIZATION PROCEEDING

BURTON R. LIFLAND, Bankruptcy Judge.

The debtor, on the morning of a scheduled State Court mortgage foreclosure sale, filed a petition under Chapter 11 of the Bankruptcy Code. It additionally sought and obtained a stay order directed against the scheduled sale. The order was ignored despite actual notice to the participants at the sale. Within weeks of the commencement of the case, the debtor's attorney, who was also its sole operating officer and active board of directors member, died. At this unforeseen, crucial stage of the proceedings, while the debtor was devitalized and without supervision or guidance, counsel for Larchmont Federal Savings and Loan Association ("Larchmont") unfelicitously sought dismissal. Eschewing more apparently significant dismissal grounds, an emboldened Larchmont challenged the formality of execution and sufficiency of the petition coupled with an assault on the standing of the debtor's replacement counsel to appear and be heard in opposition.

After focusing on the myriad serious and nonserious issues raised by Larchmont, it is clear that continued refuge by the debtor in Chapter 11 depends upon the determination

of a surpassing single issue: did this debtor have an interest in the foreclosed upon property on the dates relevant to the New York State mortgage foreclosure proceeding? In summary, the debtor, a Florida corporation, claims ownership to the subject real property located in this state as its sole valuable asset. Its interest, if any, is based upon a deed delivered to the debtor by its parent corporate grantor during a hiatus between the execution of its articles of incorporation and their subsequent filing by the Florida Secretary of State. Ownership of the property is essential to the debtor's reorganization.

## II

By the force of filing a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Reform Act of 1978 (the "Code"), the debtor was accorded an order for relief on January 6, 1981. § 301.[1] Shortly thereafter, by Order to Show Cause, Larchmont, the senior mortgagee of the property at issue, moved to dismissed the case.[2] Among the various grounds raised, those relating to the petition's alleged technical defects as to form and execution have been cured, this, apparently being conceded by Larchmont, obviates the need for further comment with respect thereto. Alleged conflict of interest problems by debtor's counsel, have also been laid to rest.

The debtor is a Florida corporation whose articles of incorporation were executed on March 21, 1980, but not filed until July 10, 1980. Proceeding from this state (New York) counsel for the incorporators utilized a nationwide corporate service company to handle the mechanical aspects of the incorporation process (i. e.: to supply the necessary form documentation and make the proper filings with the State of Florida). Evidently, the need to procure a registered agent in compliance with Florida's General Corporation Act § 607.037, delayed the necessary filing.

Debtor's raison d'etre is to hold title to real property. At the time of the filing of its petition, debtor's only claimed valuable asset was the real property and improvements thereon at issue, located at 80 Lincoln Avenue, Purchase, New York (the "property"). Looking two steps backward in the chain of title, the property was conveyed from Servo Systems, Inc., a Delaware corporation, (an entity with a similar name to, but unrelated to the debtor) to Unicorn Insurance Company, a Delaware corporation, by a deed dated August 16, 1979 and filed in the Office of the Westchester County Clerk (New York) on May 5, 1980. The property was next conveyed from Unicorn Insurance Company to the debtor, The Servo Systems, Inc. (a wholly-owned subsidiary of the grantor, Unicorn Insurance Company) by a deed dated March 31, 1980 and filed with the Westchester County Clerk on June 26, 1980.

Prior to the recording of either of the aforesaid deeds, Larchmont, on May 5, 1980, commenced a foreclosure action in the Supreme Court of the State of New York, County of Westchester, by filing a summons and complaint and *lis pendens*, naming several parties with interests in the property. Neither the debtor nor its grantor, Unicorn Insurance Company, were named as parties. Judgment of foreclosure and sale was granted on November 12, 1980 and a foreclosure sale was held and completed on January 6, 1981. Testimony elicited from Larchmont at the hearing totally supports this court's finding of fact that prior to the commencement of the foreclosure action, Larchmont had actual knowledge of the Unicorn ownership interest in the property and was in possession of a copy of the deed from the prior record owner to Unicorn. The failure to name Unicorn as a defendant in the foreclosure action renders that proceeding a nullity as

---

1. Unless otherwise indicated, section references are codified in Title 11, United States Code.

2. The parties ultimately recognized § 1112(b) as the controlling section governing consideration of the motion to dismiss.

to Unicorn.[3] However, the foreclosure non-joinder in and of itself gives little comfort to the debtor as successor in interest to Unicorn. A final resolution of Unicorn's known property interest, as well as the foreclosed interests of other defaulting defendants, raise lack of due process and good faith issues that are left to be dealt with in another appropriate forum.

### III

To determine the debtor's interest in the subject property, this court must take a particular path of authority guided by the all too familiar *Erie* doctrine and its aftermath. See, *City of Milwaukee v. Illinois and Michigan,* —— U.S. ——, at ——, 101 S.Ct. 1784, at 1790, 68 L.Ed.2d 114 (Part II) (1981).

■ Whether title passes under a deed is a substantive question of a state's real property law and all questions relating to the validity of a conveyance are governed by the laws of the situs of the real property and not by the domicile of the parties. See, *White v. Howard,* 46 N.Y. 144, 159 (1871); 15 N.Y.Jur. *Deeds* § 5 at p. 60; 4A *Collier on Bankruptcy* (14th Ed.) ¶ 70.16, N.1 at p. 151; 17 *Fletcher Cyclopedia Corporations,* ¶ 8326 at pp. 96–97, ¶ 8352 at p. 158.

■ Under New York's law of deeds, a valid grant may be made to a corporation that can hold either in its own right or as trustee. See 15 N.Y.Jur. *Deeds* § 32 at p. 84. Grants may not be made to lesser formalized groups, combinations or associations who are not accorded positive legal status. In *Schein v. Erasmus Realty Co.,* 194 A.D. 38, 184 N.Y.S. 840, 841 (1920) the court was unequivocal in proclaiming that a mere association, which failed to qualify as a juridical entity, is incapable of holding title. Where such a transfer is attempted, no legal title passes and title remains in the grantor. *Id.,* 184 N.Y.S. at 841. For a deed to be operative as a conveyance, the law

requires that a designated, legally recognized, grantee, be it a natural or artificial person, be in existence at the time of the conveyance and be capable of taking title. See, 15 N.Y.Jur. *Deeds* § 34 at p. 85 and 23 Am.Jur.2d *Deeds,* § 43 at p. 105. *A fortiori,* an unincorporated enterprise that intends to become a corporation, but fails to achieve corporate status in law or in fact at the time of a grant, does not receive title to real property, even if it achieves corporate status at some later date, because there is no grantee in existence capable of holding title to the property when the parties attempt the transfer. See, *Kiamesha Development Corp. v. Guild Properties, Inc.,* 4 N.Y.2d 378, 175 N.Y.S.2d 63, 70–71, 151 N.E.2d 214 (1958).

■ While a corporation may be capable of taking title to real property, a foreign corporation (one that derives its existence under laws of another state, see N.Y. B.C.L. § 102(a)(7); 20 C.J.S. *Corporations,* § 1783, at p. 10; *Home Owner's Loan Corp. v. Barone,* 164 Misc. 187, 298 N.Y.S. 531, 534 (1937)) such as the debtor, has no inherent right to hold property in New York. Foreign corporations are, however, permitted to do so by statute. N.Y. B.C.L. § 1307. *Cf.* 20 C.J.S. *Corporations* §§ 1791, 1868–1871 (power to act in absence of statute). And, while under this section foreign corporations may acquire and hold real property in this state, it is clear that this right is an exercise of comity and that the enactment does not change, modify, or enlarge the powers of corporations given by the state which created them. *Matter of Prime,* 136 N.Y. 347, 359, 32 N.E. 1091 (1893); *See generally,* 20 C.J.S. *Corporations* § 1789, at p. 13; *Fletcher Cyclopedia Corporations,* §§ 8330–8345 at pp. 108–153. Implicitly, foreign corporations are subject to applicable domestic law, and may not engage in acts prohibited by local laws or against local public policy. 17 *Fletcher Cyclopedia Corporations* § 8339 at p. 135.

---

**3.** Unicorn was a necessary party to the mortgage foreclosure proceeding. See N.Y. RPAPL § 311 (McKinney 1979); CPLR §§ 1001(a), 1003; 14 *Carmody-Wait* 2d §§ 02:88, 89. Therefore, as to Unicorn, the proceeding is null

and void. *Carmony-Wait Id.* at p. 715; *Mandelino v. Levy,* 49 Misc.2d 134, 135, 266 N.Y. S.2d 953, 954 (1966); *Smith v. Pac. Improvement Co.,* 104 Misc. 481, 483, 172 N.Y.S. 65, 67 (1918).

■ Although the propriety of a conveyance and the right of a foreign corporation to exercise corporate powers extraterritorially are determined by reference to domestic law, the validity of the incorporation of a foreign corporation is a question of law tested by the laws of the state of its corporate domicile. *See, Demarest v. Flack*, 128 N.Y. 205, 215, 28 N.E. 645 (1891); 20 C.J.S. *Corporations* § 1884a, at p. 105; 17 *Fletcher Cyclopedia Corporations* § 8326 at p. 98; *Cf.* F.R.Civ.P. 17(b) (capacity of a foreign corporation to sue is governed by the law of the company's domicile); *Accord Restatement of the Law 2nd, Conflict of Laws* § 296 at p. 290.

The Florida General Corporation Act, added by Laws 1975 c. 75–250, effective January 1, 1976, contains 3 sections bearing upon the debtor's attainment of corporate status. In pertinent part they provide:

607.164 Articles of incorporation; execution; content; delivery and filing

\*      \*      \*      \*      \*      \*

(4) The articles of incorporation shall be delivered to the Department of State. If the Department of State finds that the articles of incorporation conform to law, it shall, when all fees have been paid as prescribed in this chapter, file the articles of incorporation in accordance with this chapter.

607.167 Commencement of corporate existence

The date when corporate existence shall commence shall be upon the filing of the articles of incorporation by the Department of State . . . .

\*      \*      \*      \*      \*      \*

607.171 Effect of certificate of incorporation

The certificate of incorporation shall be conclusive evidence that all conditions precedent required to be performed by the incorporators have been complied with and that the corporation has been incorporated under this chapter, except as against this state in a proceeding to cancel or revoke the certificate of incorporation or for involuntary dissolution of the corporation.

■ Clearly, the debtor had not satisfied these provisions and was acting outside the regular course at the time it received its deed to the property. A defect or other irregularity in the process of creating or organizing a corporation is not, however, necessarily fatal to a finding of corporate presence.

Under some circumstances a state will attribute corporate incidents to an enterprise despite its failure to comply with all statutory prerequisites. Such a corporation is labeled "de facto" and, although it is not a true corporation, for reasons of public policy, it is vulnerable only to attack by the sovereign state of its domicile. Corporate status is granted by the very fact of its acting like one. For all intents and purposes it functions as would a "de jure" corporation, which is a corporation regularly created in full compliance with all legal requirements, whose corporate franchise is not subject to attack by anyone. *See generally*, 18 Am.Jur.2d *Corporations* § 49 at p. 93; 18 C.J.S. *Corporations* § 93, at p. 489.

Both the states of Florida and New York have recognized the de facto doctrine on various occasions and both have approved a de facto corporation's right to hold and transfer real property. *See, e. g., Nunamaker v. State*, 116 So.2d 450 (Fla.App. 1959); *Lancaster v. Amsterdam Imp. Co.*, 140 N.Y. 576, 584–585, 35 N.E. 964 (1894); *Stoker v. Schwab*, 56 N.Y.Super. 122, 1 N.Y.S. 425 (1888); 8 *Fletcher Cyclopedia Corporations* § 3861 at p. 158.

The kinds of infirmities or defects in the incorporation process that result in de facto corporate status are not readily susceptible to precise definitions. As pointed out quite candidly by Professor Hornstein, sympathetic judges are often influenced in their decision by the realization of the consequences. Hornstein, *Corporation Law and Practice* § 28 at p. 29.

As pertains to filing, as opposed to not filing, of articles of incorporation, Florida

case law is silent.[4] Generally, whether the filing or recording, or both, of the articles of incorporation is a condition precedent to any corporate existence depends mainly upon the statutory scheme and the terms of the governing statutes relating to filing or recording. 8 *Fletcher Cyclopedia Corporations* § 3819 at p. 103. The various states, whose statutes vary considerably, are understandably not in agreement. 8 *Fletcher Cyclopedia Corporations* § 3818 at 103; 18 Am.Jur.2d *Corporations* § 54 at p. 598; *See also,* 22 *A.L.R.* 376, 37 *A.L.R.* 1319.

*Fletcher's* corporation treatise (relied upon by this court for restatements of general principles as well as illumination of lesser explored principles) explains that the artificial and problematic distinctions between de jure, de facto and estoppel (see *infra*) concepts were intended to be eliminated by the enactment of modern corporation legislation. Following the *Model Business Corporation Act,* many jurisdictions enacted statutes directing that the certificate of incorporation shall be conclusive evidence that all conditions precedent have been performed. *See e. g.,* Florida General Corp. Act § 607.171, *supra.* Under this scheme, no life whatsoever is breathed into the artificial corporate body until the certificate of incorporation has been duly issued; and until the issuance of the certificate, there is no corporation de jure, de facto or by estoppel. 8 *Fletcher Cyclopedia Corporations* § 3762.1 at p. 41–42. The Model Act's commentators explain that taking steps short of securing a certificate of incorporation would not constitute apparent compliance with the statutory scheme and thus a de facto corporation *cannot* exist under the Model Act. ABA–ALI 2 *Model Business Corporation Act Ann.2d* § 56 (1971). This interpretation has received tacit approval in *Mindlin v. Gehrlein's Marina, Inc.,* 58 Misc.2d 153, 295 N.Y.S.2d 172, 174 (1968), and see New York Business Corporation Law, Appendix 1, Hornstein, *Analysis of Business Corporation Law* ("The de facto doctrine is codified." *Id.* at 450.), and *Swindel v. Kelly,* 499 P.2d 291, 299 N.28 (Alaska 1972); and, has received outright acceptance in *Timberline Equipment Co., Inc. v. Davenport,* 267 Or. 64, 514 P.2d 1109 (1973); *Robertson v. Levy,* 197 A.2d 443 (D.C.App. 1964); and, *Cahoon v. Ward,* 231 Ga. 872, 204 S.E.2d 622, 624 (1974). *See also,* Hornstein, *Corporation Law and Practice* § 29 at p. 30. *Contra, Vincent Drug Co. v. Utah State Tax Comm.,* 17 Utah 2d 202, 407 P.2d 683 (1965).[5]

Reviewing the relevant Florida General Corporation Act provisions set out above, this court concludes that the terms of the statute and the statutory scheme evidence an intent by Florida's legislature to make the filing of the articles of incorporation mandatory to the inception of *any* corporate existence. Section 607.171 states the certificate of incorporation *shall* be conclusive evidence that *all* conditions precedent have been performed. It does not state that the filing of the articles of incorporation shall be conclusive evidence of the performance of conditions precedent because the filing is of itself an important condition precedent. Section 607.171 must also be read together with § 607.167, which specifies that corporate *existence shall commence* upon the *filing* of the articles of incorporation by the Department of State.

---

4. *Nunamaker v. State,* 116 So.2d 450 (Fla.App. 1959) decided prior to the enactment of Florida General Corporation Act § 607.171 (the statute controlling here), although not clear implies that de facto existence is possible without a certificate of incorporation having been issued. What is clear is the court's absence of analysis, and therefore the case is of little help in resolving the issue *sub judice.*

5. In examining *Vincent,* the court in *Timberline, supra* observed: "No reasoning is stated and we find the case unpersuasive." *Id.* at 1111.

Further casting doubt is the clarification by the commentators to the *Model Business Corporation Act.* Under 2 Mod.Bus.Corp. Act Ann. § 50 (1960) (the version in effect at the time of *Vincent*), it was stated: "The possibility that a de facto corporation could exist under such a provision is remote". The successor version (discussed in the text above), 2 *Mod.Bus.Corp. Act Ann.2d* § 56 (1971), is unequivocal that a de facto corporation *cannot* exist under the Model Act.

Thus, once the Department of State has reviewed the articles, as it must under § 607.164, and has filed them, the corporation springs to life and is subject to attack only by the state and no other under § 607.171. Beforehand, there is nothing.

In retrospect, one must recognize that the entire process is artificial, finding substance in fictions of creation. Essentials of the formulative process cannot be overlooked or omitted.

Moreover, in this case, absent the legislative demise of the de facto doctrine in Florida, I would conclude that no de facto corporation had arisen.

The Florida cases detail four essential elements for a de facto corporation:

1. A law or charter providing for the organization of the corporation of the kind attempted to be organized.

2. An attempted good-faith compliance with statutory requirements intended as conditions precedent.

3. An unintentional omission of some legal requirement.

4. The exercise of good faith of corporate functions by which it is intended to carry out the purpose and object of the attempted incorporation under the law.

*Municipal Bond & Mortg. Corp. v. Bishop's Harbor Drainage Dist.*, 133 Fla. 430, 182 So. 794, 797 (1938); *Richmond v. Town of Largo*, 155 Fla. 226, 19 So.2d 791, 793 (1944); *Cf. Municipal Bond & Mortg. Corp. v. Bishop's Harbor Drainage Dist.*, 154 Fla. 246, 17 So.2d 226, 228 (1944) (elements restated in more general terms); *See generally*, Nader, *Florida Corporation Law* § 60.

■ As stated in Part II, apparently, the debtor's delay in consummating the incorporation process was its need to procure a registered agent. At the time of the attempted conveyance, debtor's incorporator, who was also the transferor of the property, obviously knew full well that the articles of incorporation had not been filed. Nonetheless, according to testimony by a Unicorn witness, because of certain regulations pertaining to conduct of its own business, debtor's incorporator/transferor had to pass the property posthaste. Given these circumstances, this court cannot see how the failure to file was unintentional, or how there was an attempt, or an exercise of good faith, to see that the articles were duly filed.[6] The debtor has not asserted that this is a case where the debtor's articles of incorporation were delivered to the Department of State and the Department of State lost or misplaced the articles of incorporation or for some other reason neglected to file the articles.[7] In fact, the Florida Department of State was duty bound not to file the articles of incorporation until the debtor's incorporator complied fully with applicable law.

To achieve de facto status more is required than the mere signing of articles of incorporation, 8 *Fletcher Cyclopedia Corporations* § 3803 at p. 82, or the giving of instructions to an attorney, see *Conway v. Samet*, 59 Misc.2d 666, 300 N.Y.S.2d 243, 246 (1969), or an attorney's giving of instructions to a corporate service company, to incorporate. There must be a bona fide attempt or colorable compliance with the statutory scheme; or, as expounded by the Florida courts, an attempted, good faith compliance combined with an unintentional omission. This effort simply was not present.

Occasionally, courts are tempted, with the benefit of hindsight, to strain and find compliance with the prerequisites to the de facto doctrine, especially since, where, as here, the ultimate filing resulted in de jure status. But it is impossible to conclude that there was corporate existence at the time of the attempted grant. In fact, casting further doubt, it was not until four months

---

6. *Unicorn Insurance Company's May 5, 1980 recording of its own deed subsequent to its March 31, 1980 transfer of the property to the debtor* is indicative of its lack of credibility in the debtor's corporate existence on the date of the grant.

7. Although Larchmont's direct attack on title arose somewhat late in its multi-tiered motion to dismiss, (the predicates for this course having surfaced almost from the start) the debtor, with full opportunity to proceed, apparently saw no need to further develop the record.

after the grant from Unicorn that the debtor's articles of incorporation were finally filed and compliance achieved. *See generally*, 8 *Fletcher Cyclopedia Corporations* §§ 3796–3798 at pp. 69–76.

Moreover, there is clearly a lack of equity here for finding in favor of the debtor. This is not a case where the court has to protect an innocent third party mortgagee; *See, e. g., Petition of Planz*, 282 A.D. 552, 125 N.Y.S.2d 750 (1953).[8] Nor can the court bootstrap and sidestep the issue by finding express or implied ratification of a promoter's contract. *See, e. g., Whitney v. Wyman*, 101 U.S. 392 [1050, 1052], 25 L.Ed. 1050 (1880); *Planz, supra*, 125 N.Y.S.2d at 752. A deed to a grantee not in existence is not susceptible to this theory. Finally, this is not a case where a holding adverse to alleged corporate existence exposes shareholders to liability beyond that of their intended capital contribution.

Lastly, there is no basis upon which to interpose estoppel [9] and cut off Larchmont's collateral attack. Among other grounds, estoppel may arise by contracting or dealing with an entity as a corporation, or by suing, counterclaiming, or intervening against a corporation as such, or by executing a deed or mortgage to a corporation. See, 8 *Fletcher Cyclopedia Corporations* §§ 3910, 3944, 3957–3959. Larchmont made no such tacit recognition.

### IV

On the basis of Florida law, divined with the help of the aforecited authorities, see, *Patch v. Stanley Works (Stanley Chemical Co. Div.)*, 448 F.2d 483, 488 (2d Cir. 1971), the court concludes that at the time of the grant to the debtor, the debtor was neither a corporation de jure or de facto. The grant was made to a *nul tiel* corporation incapable under New York law of taking title to property, and thus the deed did not pass title and is void. *See Kiamesha Development Corp. v. Guild Properties*, 4 N.Y.2d 378, 175 N.Y.S.2d 63, 70–71, 151 N.E.2d 214 (1958); 18 C.J.S. *Corporations* § 88, at p. 488. Accordingly, this case under Chapter 11 is dismissed for cause including the absence of a reasonable likelihood of rehabilitation § 1112(b).

During the course of these proceedings, certain real property tax payments were made by the debtor at the behest of Larchmont. After deduction of rents and profits received by the debtor, these real property tax payments together with any other expenditures that may have been made by the debtor that directly relate to the maintenance and improvement of the property are hereby directed to be reimbursed to the debtor by Larchmont.

Submit an order consistent with this decision.

---

8. *Petition of Planz*, decided prior to the enactment of New York's "conclusive evidence" provision, N.Y. B.C.L. § 403, is the only New York case this court discovered, under prior or present law, that upheld de facto existence in the absence of a filing. See cases at 11 N.Y. Jur. *Corporations* § 46 at pp. 221–222.

9. *Cf. Timberline Equipment Co., Inc. v. Davenport*, 267 Or. 64, 514 P.2d 1109, 1111 N.1 (1973).