■ PAULINE E. THURLOW, Appellant, v WILLIAM K. DUNWELL et al., Respondents. — In an action pursuant to article 15 of the Real Property Actions and Proceedings Law, plaintiff appeals from a judgment of the Supreme Court, Suffolk County (Geiler, J.), entered April 30, 1982, and a resettled judgment of the same court, dated June 17, 1982, which made certain declarations and otherwise dismissed the complaint. ¶ Appeal from the judgment dismissed. The judgment was superseded by the resettled judgment. ¶ Resettled judgment affirmed. No opinion. ¶ Respondents are awarded one bill of costs. Mollen, P. J., Mangano and Thompson, JJ., concur.

Lazer, J., concurs to affirm the judgment, with the following memorandum: This title conflict represents but another chapter in the seemingly endless saga of double assessment litigation in Suffolk County. Both chains of title at issue derive from Clarence Scott, who purchased the property in 1907. Scott's deed described the property as "[b]ounded West by Herrick Rogers; North by John and Samuel Bishop; East by Herrick Rogers and South by James White". For reasons unrevealed in the record, the Town of Southampton real property tax assessment roll described the property differently, listing the names of the owners to the north and east, but referring to the owners of the property bounding on the south and west as "unknown". The tax roll description read: N x J. S. Anderson, E x W. D. Van Brunt Est., S x Unknown, W x Unknown-11 Acres. In 1933, Scott conveyed the property to James and Terrance Lynch by a deed that incorporated the same description as that contained in the prior deed but the tax roll description remained unchanged. In 1952, the Lynches conveyed the property to Scott's nephew, defendant William Dunwell, again using the description contained in the prior deeds. When Dunwell failed to receive any tax bills, he visited the town assessor's office and had the property placed on the tax roll with a description that conformed to the one in his deed. Dunwell was unaware that the old tax item containing the unknown owner references continued to exist on the roll as assessed to Clarence Scott, the 1907 grantee who had continued to pay the taxes since that time. ¶ In 1956, Clarence Scott died and a will contest ensued between his son, Walter Scott, and his nephew, defendant Dunwell. Under the terms of the settlement between these contestants, Dunwell made five conveyances to Walter Scott, one of which contained a description identical to the original tax roll item referring to unknown owners on the south and west. The validity of this deed to Walter Scott is one of the crucial issues in this case. ¶ After making the conveyance to Walter Scott, Dunwell continued to pay taxes on the tax item that had been placed on the tax roll at his behest and which contained a

sufficient description. Walter Scott, on the other hand, failed to pay the taxes under the old tax roll item that his father had paid until his death. The result was a tax sale and a tax deed was issued by the County of Suffolk to Joseph Harris containing the old tax roll description with the unknown owner references. ¶ Following receipt of the tax deed, Harris had the property surveyed and the old tax roll description altered so that it read: N-Anderson & Van Brunt Est., E-Formerly D. Rose, S-Formerly Foster, W-Formerly H H Post 9.116A. When Harris subsequently defaulted in paying the taxes, a second tax sale took place and in 1974 a tax deed containing this altered tax roll description was delivered to the plaintiff, Pauline Thurlow. One year after Thurlow obtained her tax title, Dunwell made a conveyance to a subdivider, Joseph Gazza, using the description contained in the original deed into Clarence Scott. Gazza, in turn, conveyed to various lot owners. It is now argued, of course, that what Dunwell purported to convey to Gazza he had already conveyed to Walter Scott by the deed that made reference to unknown owners. ¶ In December, 1977, Thurlow commenced this action pursuant to article 15 of the Real Property and Proceedings Law to bar Dunwell and his successors from claiming title to the property. The action named as defendants the individual lot owners, the mortgagee of the property, and Dunwell. Thurlow's claim was based upon the tax title obtained by Harris and her own tax deed. She also asserted that defendants' chain of title was broken when Dunwell made his conveyance to Walter Scott. The defendants responded that the double tax assessment plus the insufficiency of the description in the Harris tax deed rendered Thurlow's subsequent tax title a nullity. At the trial that ensued, Thurlow's sole witness was a land surveyor whose company had prepared the survey for Harris in 1964 following the first tax sale. While this witness had not participated in the making of the survey and had no firsthand knowledge of the work that had been done, he testified that the firm's records indicated that the field work had been done by Willie Van Brunt, an adjoining landowner, and the survey was prepared "[b]ecause of Mr. Van Brunt's first hand knowledge of where the piece was". According to the witness, Van Brunt "had a very good idea of exactly where this piece was". In addition, the survey company utilized its private records to locate all of the deeds to property surrounding the parcel at issue. The land remaining between the boundaries of the surrounding property was deemed to be the property in issue. ¶ In its decision, Special Term concluded that the tax roll description which provided the names of owners of property abutting the north and east boundaries did not provide the requisite definiteness. The court found the tax deed description to be "so vague, indefinite and inaccurate so as to render the tax deed void as a matter of law". The judgment declared that the tax deeds and corresponding tax sales in the Thurlow chain were void. ¶ The standard for determining the sufficiency of a deed description is whether it enables the property to be identified with reasonable certainty so that all persons interested in the property can trace the movement of title (*Town of Brookhaven v Dinos,* 76 AD2d 555, affd 54 NY2d 911). Here, the description in the deed from Dunwell to Walter Scott and in the subsequent tax deed to Harris provided information relating only to two courses since the reference to the existence of unknown owners adjacent to the other courses added nothing to the description. Such a two-course description is defective because it does not close, either expressly or by construction (see *Zink v McManus,* 121 NY 259; *Matter of New York Cent. & Hudson Riv. R. R. Co.,* 90 NY 342; *Hunt v Dekin,* 187 Misc 649, affd 273 App Div 800, affd 298 NY 575; Lemley, Due Care in Drafting Real Property Descriptions, 7 Cleve-Marshall L Rev 324). A description containing only two boundaries ascertainable by resort to public records leaves it impossible to determine "the form or shape of the lot or how far, either to the west or the

south, its actual boundaries extend" (*Zink v McManus, supra,* p 265). ¶ The validity of the Harris tax title or the title conveyed by Dunwell to Scott were rendered no probative assistance by the admission in evidence of the Harris survey. The survey was prepared partly on the basis of the personal knowledge of an adjoining landowner and the private files of a surveying company. While under certain circumstances extrinsic evidence may be received to assist in the construction of deed descriptions (see *Town of Brookhaven v Dinos,* 76 AD2d 555, 562, affd 54 NY2d 911, *supra;* 6A Powell, Real Property, par 887 [1]), the extrinsic evidence in this case was inadmissible and without probative value. Since a real property conveyance implicates the Statute of Frauds (General Obligations Law, § 5-703, subd 1) as well as the recording act (Real Property Law, § 291), the written description must furnish the means of identifying the land or at least provide the key or hook upon which the extrinsic evidence operates (*Harris v Oakley,* 130 NY 1; *Scott v Woodworth,* 34 Cal App 400; *Smith v Wilkinson,* 208 Ga 489; *Ault v Clark,* 112 NE 843 [Ind]; 6 Thompson, Real Property, § 3025; 15 NY Jur, Deeds, § 81). Although extrinsic evidence may be used to explain ambiguities in a deed or to fit a description to land (see *Cordua v Guggenheim,* 274 NY 51; *Mullen v Washburn,* 224 NY 413), the instant evidence impermissibly added to the terms of the writing in violation of the parol evidence rule (see *Harris v Oakley,* 130 NY 1, *supra; Calmes v Weill,* 243 So2d 408 [Miss]; *Meadow Riv. Lbr. Co. v Smith,* 30 SE2d 392 [W Va]). When the issue is whether a property can be located from the description, private information cannot furnish the basis for sustaining the validity of the description because that type of information may not be available to others searching the title records (see *Kiamesha Dev. Corp. v Guild Props.,* 4 NY2d 378, 387). Plaintiff's reliance on cases permitting a broader range of parol evidence in boundary dispute litigation (see, e.g., *Domin v Walters,* 79 AD2d 1086; *Malin v Ward,* 21 AD2d 926; *Fallone v Gochee,* 9 AD2d 569) is misplaced. The validity of conveyances generally is not at issue in boundary disputes; therefore the Statute of Frauds usually is not involved and parol is admissible (*Terry v Chandler,* 16 NY 354; 1 NY Jur 2d, Adjoining Landowners, § 136). ¶ I agree with Special Term that the tax deed to Harris was void because it was based upon a tax roll description which did not enable "the parcel [to be] identified and located with reasonable certainty" (Real Property Tax Law, § 504, subd 4; *Kiamesha Dev. Corp. v Guild Props.,* 4 NY2d 378, *supra; Hunt v Dekin,* 298 NY 575, *supra).* The insufficient description affected both the validity of the tax lien procedures by which the county acquired title and the validity of the deed by which it purported to convey its title to Harris. For the same reason, the conveyance from Dunwell to Scott conveyed nothing because the description was fatally inadequate (*Town of Brookhaven v Dinos,* 76 AD2d 555, affd 54 NY2d 911, *supra).* ¶ Nevertheless, despite Special Term's complete reliance on description criteria, there is a further complicating factor. Although the Harris tax title was fatally defective because of the indefinite description, the amended description the assessor placed on the tax roll at Harris' behest was sufficient to identify it, and the subsequent tax sale to Thurlow was based on the sufficient description. When an assessment describes property sufficiently, an error or omission in identifying the owner does not invalidate the tax levy or enforcement proceedings (Real Property Tax Law, § 504, subd 4; *Congregation Yetev Lev D'Satmar v County of Sullivan,* 59 NY2d 418, 422; *Lilly Dale Assembly v County of Chautauqua,* 72 AD2d 950, affd 52 NY2d 943, cert den 454 US 823). Despite this proposition, Thurlow's title based on the second tax sale is defective. Dunwell had paid the taxes on the property at issue which was adequately described under the tax item assessed to him, and it is well settled that a tax lien against a parcel upon which the taxes have been paid is a nullity (*Cameron Estates v Deering,* 308

NY 24; *Challette, Inc. v Leeds,* 28 AD2d 717; *Middle Is. Land & Water Co. v Hutner,* 259 App Div 294; *Matter of Town of Brookhaven,* 78 Misc 2d 499). Delinquency in the payment of taxes is a rather obvious condition precedent to the commencement of a tax lien foreclosure proceeding (*Cameron Estates v Deering, supra; Joslyn v Rockwell,* 128 NY 334), but here there was no delinquency. Thus, apart from the other deficiencies I have discussed, no tax title of any validity was ever conveyed to Harris or to Thurlow. Defendants' chain of title is not dependent on tax title, of course. Since Dunwell's deed to Walter Scott contained an insufficient description, it conveyed nothing and title remained in Dunwell until he conveyed it to Gazza, who then conveyed to the lot owners who are among the current defendants.